# Babcock *versus* Day.

A., a sheriff's vendee of a tract of land, assigned the same to B. by indorsement on the sheriff's deed.   The deed correctly described the tract of land by metes and bounds, but incorrectly recited that two frame barns were situate thereon, and passed therewith, whereas they were situate on an adjoining tract of land belonging to a third party.   The assignment was made by both parties under this mutual misapprehension as to the true location of the barns.   Judgment having been obtained for the purchase-money by A. against B., the latter obtained a rule to open the judgment and allow him to defend by defalking from its amount the value of the barns, amounting to one-third of the purchase-money, which rule the court below discharged:

*Held*, that, while in view of the mutual mistake of the parties, B. was entitled to equitable relief, yet the discharge of his rule was not error; his remedy was to tender a reconveyance and sue for the rescission of the contract.

May 23d 1883.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

CERTIORARI to, and appeal from the decree of, the Court of Common Pleas of *Warren county :* Of January Term 1883, No. 2.

This was an appeal by Frank O. Babcock from a decree of the said court discharging a rule to show cause why a judgment entered against him by E. H. Day should not be opened and the defendant let into a defence.

The facts were as follows: In the year 1880 and prior thereto Mark and Priscilla York owned and occupied a farm consisting of over 96 acres. Upon this farm were erected a dwelling house and two frame barns. On June 8th 1881, this tract of land, with the exception of one acre, upon which two barns were erected, was sold at sheriff's sale on a lev. fa. to E. H. Day. The sheriff's deed, after correctly describing the portion sold by courses, distances, and boundaries, incorrectly added the statement: " On which is erected a frame dwelling house, *two frame barns,* one hundred fruit trees, also a good spring of water." On September 20th 1881, Day assigned the deed to Babcock by the following indorsement on the back thereof : "For and in consideration of the sum of fifteen hundred dollars, to me in hand paid, the receipt of which is hereby acknowledged, I hereby assign, transfer and set over to Francis O. Babcock, the within deed and the premises thereby conveyed, to have and to hold the same to him, his heirs and assigns, forever."

On this assignment the sum of $300 was paid in cash and a judgment note for $1,200 was given, upon which the judgment now sought to be opened was entered September 21st 1881.

The circumstances under which the assignment was made, as detailed by Babcock, were as follows : " I got an assignment of a sheriff's deed. Mr. Day represented to me the amount of land and the buildings that were upon it. He wanted to sell me 96 acres, with house and two frame barns and one hundred fruit trees. He presented to me a deed from the sheriff to him of the premises at the time he gave me the deed of the premises. He didn't represent to me that there was any mistake in the sheriff's deed, and never represented to me that there was anything wrong in the matter. Mr. Day showed me his deed. He did not show me any deed till the time of my buying the property, and he showed me the deed and represented it as a warranty deed. He said it was as good as any deed that could be made. I had lived near this farm for a great many years Mr. Day lived two miles from it. He told me of the property. I don't know as he said there was a house or barn on it. He told me of the Mark and Priscilla York property was his, barns and houses and all. I had no reason to doubt before I went to Day but that the barns

were on the property. Supposed they were on it. I don't recollect asking Mr. Day whether the barns were on the property. He didn't say he had made a survey. I don't know as I had any reason to suppose Mr. Day knew any more about the property than I did. I don't recollect any discussion between Mr. Day and myself about the improvements on the property. He said their entire interest was sold, and that he owned it. He had a deed. He has several times told me that those barns were purchased, both before and since the purchase. I don't know as any one, at the time of the purchase, claimed they were not sold. No one at that time had set up any claim to those barns. I know of no fact that leads me to suppose Mr. Day knew of any claim to them."

Babcock, who contended either that Day had been guilty of fraud or misrepresentation, or that there had been on both sides an honest mistake as to the location of the barns, claimed to defalk from the amount of the judgment the value of the acre of land and the two barns erected thereon.

The court (BROWN, P. J.) held, however, that in the absence of fraud, which had not been proved, the defendant in the judgment was without a remedy, and therefore discharged the rule. Babcock thereupon took this appeal, assigning for error the discharge of his rule.

*D. I. Ball* (*C. C. Thompson* with him), for the appellant. —There is an equity permeating this case which cannot be lost sight of. The principle that a person should not be compelled to pay for that which he does not receive applies. The equities between the parties were sufficient to have warranted the court below in opening the judgment. Here the plaintiff below sold, or supposed he sold, a certain piece of property with improvements to the defendant below for the sum of $1,500, and received his pay therefor, or its equivalent. The defendant purchased, or supposed he purchased, the same and paid therefor. It turns out that the plaintiff did not own a large portion of the property, but received security for the same. The defendant did not buy it, although, supposing he did, paid his money and gave his obligation. The deficiency in the quantity of land supposed to have been purchased by Babcock was equal in value to about one-third of the purchase price of the whole land. Here is such a gross mistake or misapprehension of facts between the parties that equity should relieve, either by decreeing a specific performance of the real contract as made and understood by the parties, as far as the vendor can perform it, or by directing a reduction of the judgment to the amount that will compensate the vendee for the loss which he has incurred through a partial failure of performance: Story's

[Babcock v. Day.]

Equity, § 779; Waters v. Travis, 9 Johns. 464; Erwin v. Myers, 10 Wr. 96; Adams on Equity, p. 90; Miles v. Stevens, 3 Barr 21; Rice v. Olin, 29 P. F. S. 391; Good v. Good, 3 W. & S. 472; Steinhauer v. Witman, 1 S. & R. 438; Wacker v. Straub, 6 W. N. C. 381; Beaupland v. McKeen et al., 4 Casey 130.

*Charles H. Noyes*, for the appellee.—There was no such mistake, as will entitle the appellant to equitable relief. By the exercise of common prudence he would have avoided the mistake, and his loss is due to his own negligence. Admitting, however, his right to relief, he has mistaken his remedy. He must either abide by his contract or move to rescind it. He cannot hold the benefits of the bargain and impose the loss upon an innocent vendor: Harlan v. Coal Co., 11 Casey 287; Pennock v. Tilford, 5 Harris 456; Fisher v. Worrall, 5 W. & S. 478; Weist v. Grant, 21 P. F. S. 95; Bower v. Fenn, 9 Norris 359.

Mr. Justice CLARK delivered the opinion of the court, October 1st 1883.

This appeal is taken, under the Act of 4th April, 1877, to the decree of the Court of Common Pleas of Warren county, refusing to open a judgment, entered upon a single bill, by virtue of a warrant of attorney contained therein, in favor of E. H. Day against Frank O. Babcock, for $1,200.

The application to open a judgment, whether entered upon a judgment note or otherwise, is an appeal to the discretion of the court. The only question raised here, in such case, therefore, is whether the court rightly exercised that discretion under the evidence: Earley's Appeal, 90 Penn. St. 321. This court will not, except for plain error, review the sound discretion of the court below, in weighing the evidence; the same weight will be given to the conclusion of the court upon questions of fact, as is given to the report of an auditor, or the finding of a jury: Bedell's Appeal, 87 Penn. St. 510; McConnell's Appeal, 97 Penn. St. 31. When, however, the judgment of the court is based upon a deduction from other facts, the conclusion, being the result of reasoning, is subject to revision and correction if erroneous: Hindman's Appeal, 85 Penn. St. 466; Milligan's Appeal, 97 Penn. St. 525.

We are well satisfied, from the testimony, that there was no misrepresentation made by Day to influence Babcock in the purchase; this fact the court distinctly finds,—and we think the court was certainly right. Babcock's testimony does not clearly establish the fact that any representations were made by Day, as to the location of the barns; and being a party to the

controversy, it is fair to assume that he testified as strongly in his own interest as the truth would allow.

He says, " I had no reason to doubt, before I went to Day, that the barns were on the property.  I supposed they were on it.  He told me the Mark and Priscilla York property was his, barn, houses and all."

He further testifies, in apparent explanation of this :—" I don't know as he said there was a house or barn on it."  " I don't recollect asking Mr. Day whether the barns were on the property."  " I don't recollect any discussion between Mr. Day and myself, about the improvements on the property." " I don't know as I had any reason to suppose Mr. Day knew any more about the property than I did."  " I know of no fact that leads me to suppose Mr. Day knew of any claim to them " (the barns).

It was certainly the intention of the parties to this transaction, that Day should transfer to Babcock such interest only as he held by the sheriff's deed; the writings clearly indicated this, the transfer was of " the within deed and the premises thereby conveyed."  No larger boundary and no greater estate was in contemplation of the parties.  The nature of the transaction was unmistakable.  There was no reckless assertion—no warranty—no concealment—no deception or fraud; they were both sincere and honest, both may have been mistaken. No hostile claim appeared, no suspicion even attached.  Their opportunities for knowing the location of the barns were at least equal.  Babcock lived on an adjoining farm, knew the lines, and directed the subsequent survey.  This is not, therefore, the case of a person selling lands which he did not own, and for which he could not make title.  The description in the deed was by metes and bounds, and the deed and transfer were effective to vest the title in Babcock.  There was no defect in the title to the lands described in the deed, and the truth, as to the actual location of the barns, was as easily ascertainable by one of the parties as the other.

The mistake of the parties, however, which resulted from the fault of neither, was so essential, so material and substantial, as that it may reasonably be supposed that, but for the misdescription, they might never have entered into the contract at all.  Under the peculiar and special facts of this case, if the injury had been but small, as compared with the consideration, we might hold the defendant to be without remedy, but the magnitude of the injury is such, that the defendant should obtain relief in some form.  He must not however hold to the profits of his contract, and demand compensation for his loss. He should put the plaintiff in statu quo, tender a reconveyance, demand and sue for a rescission.  This is, we think, his proper

[Bonesteel v. Sullivan.]

and indeed his only remedy. We cannot make a contract for the parties which they never made for themselves.

The judgment is affirmed.