# Pfaff v. Bacon, Appellant.

*Practice, Supreme Court—Appeals—Assignments of error—Defective assignments.*

1. Assignments of error which fail to set out in the exact language of the court the matters alleged to be erroneous in the disposition of the case, are defective and will not be considered.

*Elections—Contest—Opening of ballot boxes—Judicial discretion—Waiver of objections—Evidence—Production of ballot from proper custody—Presumption of validity — Marking ballots — Improper marking—Colored stickers—Act of June 10, 1893, Section 30, P. L. 419, 435—Invalid ballots.*

2. In a contested election case, the Supreme Court is not limited to a formal examination of the record, but may ascertain the facts from the record, and correct all erroneous conclusions, judgments, or decrees based thereon.

3. A petition alleging fraud, mistake, or irregularity in the counting of ballots and praying that the ballot boxes be opened, and for a recount, is addressed to the sound discretion of the court, and the court does not abuse its discretion in ordering such ballot boxes to be opened without first requiring proof of the matters alleged.

4. Where, after the ballot boxes of certain districts of a ward have been opened, the respondent in the proceeding prays that the ballot boxes of the remaining districts be opened, he thereby waives his right to object to the original order.

5. The fact that ballot boxes brought before an examiner appointed to count the ballots were produced from the proper custody, is prima facie proof that the ballots therein contained were those cast at the election, and such ballots may be counted in the absence of allegation or proof that any of the boxes were tampered with, or that the ballots were not identical with those cast at the election.

6. The attaching of a pink sticker to the space on the ballot left blank for inserting other names lends itself readily to a violation of Section 30 of the Act of June 10, 1893, P. L. 419, 435, prohibiting a voter to allow his ballot to be seen with the intention of letting it be known how he is to vote, and is not to be commended.

7. Where a ballot otherwise properly marked, contains a cross mark in the square opposite the name of a candidate, which is smudged or partly obliterated, it is apparent that the voter made an error by placing a mark in the wrong square and then undertook to erase it; the intention of the voter in such case is plain, and the ballot is valid.

8. In an election contest it appeared that certain ballots contained a cross in the party square of the party to which contestant belonged, and also marks opposite the name of contestant, but not opposite the names of all the other candidates of contestant's party; that other ballots, in addition to the mark in the party square of contestant's party had marks opposite the names of certain other candidates of contestant's party, but not opposite contestant's name. *Held,* that all such ballots were void.

Mr. Justice MESTREZAT dissents.

Argued Jan. 20, 1915. Appeal, No. 272, Jan. T., 1914, by defendant, from decree of Q. S. Philadelphia Co., Nov. Sess., 1913, No. 1, dismissing exceptions to report of examiner, in case of Andrew J. Pfaff, et al., v. William D. Bacon. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Reversed.

Petition for leave to contest an election, for the opening of ballot boxes and for a recount of the ballots.

Exceptions to report of Preston K. Erdman, Esq., examiner. Before AUDENRIED, J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions.  William D. Bacon appealed.

*Error assigned,* among others, was the decree of the court.

*John Monaghan,* with him *Joseph S. MacLaughlin,* for appellant.

*Thos. Raeburn White,* with him *William J. Elliot* and *Frederick F. Windle,* for appellees.

OPINION BY MR. JUSTICE POTTER, May 3, 1915:

This appeal is from the final decree of the Court of Quarter Sessions of Philadelphia County declaring Philip H. Moore elected select councilman of the City of Philadelphia from the forty-fourth ward, at the election held November 4, 1913.  The official count of the election made it appear that for the office of select councilman, Philip H. Moore received 2,506 votes and William D. Bacon received 2,513 votes.  Upon a petition duly filed alleging error in the count, the court appointed an examiner, and instructed him to open the ballot boxes containing the ballots cast in the seven divisions of the ward which were specified in the petition.  The result of the recount to this extent, was to show the apparent election of Moore, by a plurality of 29 votes.  Afterwards upon the petition of the respondent, the examiner was directed to open all the ballot boxes in the ward, which had not already been opened and reported upon, and it was ordered that the ballots therein, so far as they related to the office of select councilman, be recounted by the examiner, and report made thereon to the court.  The result of the recount apparently gave Moore the election by a plurality of thirty-seven votes.  Exceptions to the examiner's report, filed both by the petitioners and the respondent, were dismissed, and the court made an order confirming the report of the examiner and adjudging

that Philip H. Moore was duly elected select councilman for the term beginning the first Monday of January, 1914. The respondent, William D. Bacon, has appealed, and his counsel have filed thirty-two assignments of error. With the exception of the first one, they are all defective, for the reason that they do not in any case, set forth any order of the court below, or any exception to the examiner's report, or to the action of the court. All the matters alleged to have been found, dismissed, directed, etc., by the court below, are stated in the language of counsel, and not in that of the court. No reference is made to any page of the appendix, where the matters which are the subject of the assignments may be found. In Markleton Hotel Co. v. Connellsville & State Line Ry. Co., 242 Pa. 569, where counsel erred in the same way, Mr. Justice MOSCHZISKER, speaking for the court, said (p. 572) : "All the specifications of error excepting the first, which goes to the final decree, are defective in form, since in each instance they fail properly to show the action of the court below on the exception referred to in the particular assignment. We have taken occasion in several recent cases to point out that under our equity rules each assignment of error must be self sustaining, that is, it must show the exception taken in the court below to the ruling complained of, the action upon the exception—in totidem verbis—and the 'pages must be stated where the matter referred to is to be found in the paper books of appendix.' (See Prenatt v. Messenger Printing Co., 241 Pa. 267, and cases there cited)." And again in Ridgway v. Philadelphia & Reading Ry. Co., 244 Pa. 282, Mr. Justice ELKIN said (p. 283) : "This appeal might very well be dismissed on the ground that the assignments of error are not in proper form under our rules. They do not set out in the words of the court the order sustaining the demurrer or the judgment from which the appeal was taken. We have had occasion to say in several recent cases that an assignment is not sufficient which simply avers in the language of the

counsel that the trial court erred in respect to the matter about which complaint is made. The assignments must set out in the exact language of the court, the judgment, decree, order, instruction, or other matters alleged to be erroneous in the trial of the case, or the disposition made of it." In the present case, however, the first assignment of error is to the final decree of the court below, and all the questions raised by appellant, except the first one, may be considered under that assignment. The first question raised by appellant is whether the court may order the opening of the ballot boxes upon a mere petition alleging fraud, mistake, or irregularity without first requiring proof of the matters alleged, and whether the examiner may recount the ballots without proof that they are the actual ballots which were cast by the voters and counted and returned by the election officers. In considering this question it will be noted that the record here does not show that any exception was taken to the order that the ballot boxes should be opened. That order was merely interlocutory, and therefore the Act of May 11, 1911, P. L. 279, Sec. 6, does not apply: Com. v. Bonner, 238 Pa. 339; Kane & Elk R. R. Co. v. Pitts. & Western R. R. Co., 241 Pa. 608. Furthermore, although the petition expressly prayed that the ballot boxes should be opened, appellant made no denial in his answer, of the power of the court to order them to be opened and the votes recounted. In addition to this, after the ballot boxes for seven districts had been opened and the ballots counted, appellant himself presented his petition asking that the ballot boxes for the remaining districts of the ward should be opened and the votes counted, which was ordered by the court to be done. This may therefore fairly be regarded as a waiver of any right that appellant may have had to object to the original order. Aside from this, the application to open the ballot boxes, was addressed to the discretion of the court below, and there is nothing in the present case to show any abuse of that discretion. It is further suggested by counsel for appellant,

that even if it was proper to order the boxes to be opened, yet the examiner should have demanded preliminary proof that the ballots were the same which were cast, counted and returned at the election. There was proof that the boxes were those delivered on the night of the election to representatives of the prothonotary and mayor, as required by law, and that they had been safely kept in the proper place, until brought from there upon the order of the court, and delivered to the examiner. The fact that the boxes were produced from the proper custody was prima facie proof that the ballots therein contained were those cast at the election. There is neither allegation nor proof that any of these boxes were tampered with, or that the ballots were not identical with those cast at the election.

It appears that the ballots used at the election contained a column in which were printed, as prescribed by the Non-Partisan Judiciary Act of July 24, 1913, P. L. 1001, the names of all the candidates for the office of judge in various courts. At the foot of this column were the nominees for the Philadelphia Municipal Court, and following their names was a blank space for the insertion by the voters of other names. In that blank space a number of voters pasted a pink slip or "sticker" containing four names. It is contended by counsel for appellant, that the use of these stickers vitiated the ballots on which they were pasted. The acts of June 10, 1893, P. L. 419, Sec. 14, and of April 29, 1903, P. L. 338, Sec. 2, and July 24, 1913, P. L. 1001, Sec. 16, all provided that on the official ballots blank space should be left for the "insertion" of additional names, and that the voters may "insert" such names. It was held in DeWalt v. Bartley, 146 Pa. 529, that such names may be inserted by means of stickers. And in McCowin's App., 165 Pa. 233, where the Act of 1893 was under consideration, Mr. Chief Justice STERRETT said (p. 237): "The manner of inserting is not prescribed. It may therefore be done in any appropriate way, such as by writing, stamping with

metallic or rubber stamp, or by covering the proper blank space, in whole or in part, with a slip ticket or sticker, securely attached to said space by adhesive paste or other suitable material, on which ticket or sticker is printed or written a name or names, 'not already on the ballot.' " Clearly the use of the sticker in the present case did not in itself, invalidate the ballots, but going beyond that, it is contended that the pronounced color of the sticker here used, rendered the ballots void. Section 15 of the Act of 1893, requires that the ballots should be printed "upon white paper without any impression or mark to distinguish one from another." It is clear that the printing of the ballots on pink paper, either in whole or in part, would be in violation of the statute. The same would be true if some of the ballots were printed on white and others on pink paper. The difference in color would "distinguish one from another." A large pink sticker, such as was used in this case, when pasted on a ballot, distinguishes that ballot very perceptibly from one containing no such sticker. True, the stickers were put on by the voters, but in Sec. 36 of the Act of 1893, it is made a misdemeanor for a voter "to allow his ballot to be seen by any person with the apparent intent of letting it be known how he is about to vote," and it seems to us that the use of a sticker printed upon pink paper, such as is here shown, would lend itself readily to a violation of the provision of the law just cited. Its size and color enable it to be readily seen and distinguished from a distance, and it is in such marked contrast to the white paper upon which it is pasted, that it shows through upon the other side of the paper. For this reason we cannot agree with the statement of the examiner that the color of the sticker is unimportant. It should correspond reasonably with the color of the paper in the ballot, in order to avoid becoming a distinguishing mark. In the present case no reason is apparent why a sticker showing so marked a difference in color should have been used, unless it was intended in that way to distinguish

the ballots upon which they were used. We do not feel, however, that it is necessary to place our decision on the ground that the 465 ballots containing these pink stickers are invalid, and to be excluded from the count, but we express the view that the practice of using such stickers is too near the prohibited line, to be commended, and it should not be continued.

Another question raised by counsel for appellant gives us more concern, and that is, whether ballots marked with a cross in the straight party square, and then marked, not for all the candidates of that party, but only for certain individual candidates of that party, (a) including contestant, and (b) not including contestant, should be declared void. As an instance, Exhibit C, shows a ballot in which a cross is marked in the Democratic party square, and in which crosses are marked for the names of the Democratic contestants for district attorney, register of wills, state treasurer, and select council. There are no crosses after the names of candidates for the remaining offices on the ballot. The same markings are found upon Exhibit B, except as to select council. Exhibit E is marked in the same way as Exhibit C, except that the marks are in the Washington party square, and for the Washington party nominees, instead of the Democratic. The precise question here raised does not seem to have been before presented to our appellate courts. It has been held that a voter may not mark a cross in the party square, and then erase the name of one of the candidates of that party, and make a second cross after the name of the candidate of another party, for the same office: Newberry Township Election, 187 Pa. 297; Dailey's App., 232 Pa. 540. In the latter case, Mr. Justice STEWART said (p. 542) : "Under the earlier act (Act of June 10, 1893, P. L. 419), a choice of methods was allowed the elector when he came to prepare his ballot, notwithstanding the employment of the word 'shall' in that connection. To vote a straight party ticket he could either place a cross mark in the circle above the party

designated, or, no matter how many names of candidates appearing thereunder, he could accomplish the same result by placing the mark opposite the name of each. This much we have repeatedly ruled. The employment of the word 'may' in the amending clause, gives no larger privilege in this regard than the elector enjoyed before; he may still employ either method with like definite results as before; he may adopt both without invalidating his ballot, but whether he adopt either or both, he has exhausted his privilege; and if having done this, he mark within the square opposite the name of a candidate for an office, for which the party of his choice has nominated another, it is an attempt to vote for two candidates for an office to which one only is to be elected, and the ballot is nullified." In the present case the examiner and counsel for appellee rely on the expression of our Brother STEWART "he may adopt both without invalidating his ballot" as sustaining the validity of the ballots here in question. The statement, however, evidently meant that the voter may make a cross in the party square, and then if he chooses to do so, may also make crosses in every one of the squares opposite the names of the candidates of the same party. If a voter did this his intention would certainly not be in doubt, and there would be no difficulty in counting the vote as he intended it. But in the case at bar, it is not possible to say with certainty what the voters intended, when they marked their ballots, with a cross in the party square, and also marked crosses after three or four only of the names of candidates of their party. Did they intend to vote a straight party ticket? If so, why mark the names of certain individuals? Is that action to be taken as an indication that they intended to vote only for the individuals whose name they marked? If so, then the mark in the party square is invalid and without force, and carries no vote for the other offices on the party ticket. We can only guess as to what the real meaning of these voters was. It should be borne in mind that the acts of assembly provide for two meth-

ods of voting. The first method being for use where the voter desires to vote for all the candidates of a particular political party. In such case his wish is most easily expressed by placing a cross mark in the party square. The second method is where the voter desires to vote for particular candidates. In such case he follows the method of placing cross marks after individual names. The clear and simple rule is to regard these methods as mutually exclusive. This is in accord with what seems to be the established doctrine of our cases which is that when a voter has placed a cross in the party square, which means a vote for all the candidates of that party, he has "exhausted his privilege of voting": Gearhart Township Election, 192 Pa. 446 (451). In such case no further marking is allowed, unless as was indicated in Dailey's App., supra, the voter wishes to mark the names of all his party nominees, or where as in Gearhart Township Election, there are two officers to be elected and only one name is printed in the party designation, then the voter may vote for the candidate of another party. In Redman's App., 173 Pa. 59, Mr. Justice STERRETT said (p. 64): "Under the new ballot law, it is not enough that the intention of the voter may possibly be ascertained, or his irregular and equivocal acts explained by evidence dehors his ballot. The purpose of the legislature, in prescribing the form of ballot and specifically directing how it should be prepared and used by the voter, was to avoid all such inquiries and the consequences likely to result therefrom. It was intended that the ballot, when prepared by the voter and delivered to the proper election officer, should be per se self-explanatory. There is no good reason why it should not be so." And again in Rodgers' Contested Election, 234 Pa. 512, we said (p. 519): "While it may be that the court in this instance correctly guessed the intention of the voter, yet the fifty-seven mutilated ballots were not marked in accordance with the instructions contained in the act of assembly, and under the well established doctrine in this State they

should not have been counted; to permit the counting of such ballots would be a precedent fraught with grave dangers for the future." In the present case, if we follow the principle that the methods of placing a mark in the party square, and of placing marks after the names of particular candidates, are mutually exclusive, then the ballots marked in the manner above described must be held invalid, and it follows that ninety-eight votes counted by the examiner for Philip H. Moore, should have been excluded from the count. Of those ballots twenty-five were marked with a cross in the Democratic party square, and marks were also made in the square opposite certain Democratic candidates, including Philip H. Moore. Twenty-one ballots were marked in the same way, but not including Moore. Twenty-four ballots were marked with a cross in the Washington party square, and were also marked in the squares opposite certain Washington party candidates, including Philip H. Moore. Twenty-eight ballots were marked in the same way, but not including Moore. Making a total of ninety-eight ballots in all, marked in the party square and also in the squares after a few of the names of individual candidates. For the reasons above given, these ballots cannot be counted. The result will be to more than overcome the changes in the official return, which were recommended by the examiner, and to confirm the election of the appellant. While the figures as to these totals are not given in the examiner's report, yet their correctness is not disputed by counsel for appellee.

Another question raised on behalf of appellant is as to whether the intention of the voter may be inferred, when a cross marked in the square opposite the name of the candidate is smudged or partly obliterated. It is apparent in this case, that in the ballots referred to, the voters made an error in marking, by placing the cross in the wrong square and then undertook to erase it. The intention is plain, and there is no good reason why these ballots should not be counted. Counsel for appellant

also raise the question, "Whether ballots marked by the
voter with a numeral in lead pencil in the margin are
valid." As to this feature, however, the examiner re-
ported that these numbers were not upon the ballots
when they were cast, or when the boxes were first opened
and the votes counted. This finding of fact must be ac-
cepted as true. If the ballots were not thus marked by
the voters, their rights cannot be affected by the subse-
quent acts of other persons in marking the ballots.

In the argument of counsel for appellee we are re-
minded that this case must be considered only as having
been brought up under a writ of certiorari. In a con-
tested election case, however, we are not limited to a
formal examination of the record, but are at liberty to
review the conclusions of law and the decree entered by
the court below: Krickbaum's Contested Election, 221
Pa. 521; Von Moss's Election, 219 Pa. 453. In Foy's
Election, 228 Pa. 14, it was said (p. 17) : "It has been re-
peatedly ruled in our recent decisions that in election
cases we can get the facts from the record and the opin-
ion of the court below. When the facts are ascertained,
we have the right to correct all erroneous conclusions,
judgments, or decrees based thereon: Babcock v. Day,
104 Pa. 4; Woodward v. Carson, 208 Pa. 144."

Our examination of this record leads us to the con-
clusion that the examiner mistakenly included in his
count, ninety-eight votes for Philip H. Moore, and that
the court below erred in confirming his report in that
respect. As a result of the correction of this error it ap-
pears that the respondent received a plurality of the
votes cast for the office of select councilman from said
ward. It is therefore ordered and adjudged that the de-
cree of the Court of Quarter Sessions be reversed, and set
aside; and it is further ordered that the petition be dis-
missed and that the costs both in the court below and
here, be paid by the petitioners.

DISSENTING OPINION BY MR. JUSTICE MESTREZAT, May 3, 1915.:

This is a contested election for the office of select councilman for the forty-fourth ward of the city of Philadelphia. William D. Bacon was returned as elected over Philip H. Moore by seven votes. The election was contested and the Court of Quarter Sessions, after a recount of the votes, declared Moore elected by a plurality of thirty-seven votes. The court appointed an examiner, the ballot boxes were opened and the votes recounted, and the conclusion was reached by the learned examiner after a careful and painstaking consideration of the facts and the law of the case which he included in an exhaustive and elaborate report. The learned court below likewise gave the matter thorough consideration, agreed with the examiner's findings of fact and conclusions of law, and declared Moore to have been duly elected. Bacon took this appeal.

The majority of this court, as appears by the opinion, dismissed all the assignments except those which allege error in counting ninety-eight ballots cast for Moore which are held to be illegal and should have been excluded on the ground that voters, in addition to placing a cross in the party square at the head of the column, had also placed a mark opposite the names of three or four candidates on the same party ticket. This changes the result of the election for select councilman and gives the office to Bacon. The ground upon which the majority rests their conclusion is stated in the opinion as follows: "In the case at bar, it is not possible to show with certainty what the voters intended, when they marked their ballots, with a cross in the party square, and also marked crosses after three or four only of the names of candidates of their party. Did they intend to vote a straight party ticket? If so, why mark the names of certain individuals? Is that action to be taken as an indication that they intended to vote only for the individuals whose names they marked? If so, then the mark in the party

square is invalid, and without force, and carries no vote for the other offices on the party ticket. We can only guess as to what the real meaning of these voters was."

I cannot concur in the conclusion reached by the majority of the court. The Act of April 29, 1903, P. L. 338, provides that if an elector desires to vote for every candidate for a political party he may make a cross mark in the appropriate square, opposite the name of the party of his choice, in the straight party column on the left of the ballot, and every such cross mark shall be equivalent to a vote for every candidate for the party so marked. The voter may accomplish the same purpose by placing a cross mark opposite the name of every candidate on his party's ticket. He may, says section 3 of the act, vote for the candidate of his choice for each office to be filled, according to the number of persons to be voted for by him for each office, or he may insert in the blank space provided therefor, any name not already on the ballot. These are the statutory provisions with which the voter must comply in expressing his preference for candidates at an election held under the laws of the Commonwealth.

The only grounds for which a ballot may be rejected or may not be counted are set forth in the Act of 1903 which amended a similar provision in the Act of June 10, 1893, P. L. 419. The latter act provides that "if a voter has marked his ballot otherwise than as directed by this act, so that for any reason it is impossible to determine the voter's choice for any office to be filled, his ballot shall not be counted for such office." It may, however, be counted for all other offices for which the names of candidates have been properly marked. The learned examiner held, in passing upon the legality of the votes attacked in this proceeding, that the marks in the party square and opposite the names of some of the candidates on the same party ticket "are clearly not contradictory and do not tend to make at all doubtful the voter's intention to vote for Moore, nor do they, in the opinion of the examiner, indicate an intention to cast two votes for him. The

case must be of frequent occurrence, but the examiner has not been referred to any precedent for rejecting it." This was the view of the Quarter Sessions which, by an order of Judge. AUDENRIED, confirmed the examiner's report. The votes were clearly not marked otherwise than directed by the act. It is true, the voters would have accomplished the same purpose by simply placing a cross mark in the appropriate square at the head of the column which would have been a vote for each candidate upon that party-ticket. The additional marks placed opposite some of the names on the ticket did not violate the act or indicate an intention on the part of the voters to cast a ballot for any other person than those for whom they voted in placing the cross in the party square at the head of the party column. The most that can be said, and all that can be said, is that the placing of the cross marks opposite the candidates' names was surplusage, and wholly unnecessary to vote for the candidates thus indicated by the cross mark opposite their names. The act of the voter was not inconsistent with, nor contradictory of, the placing of the cross mark in the square at the head of the party ticket. It cast no doubt whatever upon the intention of the voters as to whom they intended to vote on the ticket. It is immaterial whether they placed the cross marks opposite the names of the candidates before or after they put the mark in the party square, or the reason they had for thus marking their ticket, because the act declares that the cross mark in the party square "shall be equivalent to a vote for every candidate for the party so marked." These matters cannot invalidate the ballot because the act does not direct it to be marked otherwise. The double marking, the legality of which has been recognized in the recent case of Dailey's App., 232 Pa. 540, raises no uncertainty whatever as to what candidates on the ticket the voters intended to cast their ballots. It is clear the marks in the party square indicate that the voters intended to vote for every candidate upon the ticket. If they had placed

the cross mark in the party square and placed marks opposite the names of candidates in another party column the ballot would then unquestionably be illegal and must be rejected. It would then be marked otherwise than directed by the act. The voter would be casting a ballot for two candidates for the same office when only one was to be elected. That objection, however, cannot prevail here as the additional marking was made opposite names in the column at the head of which appeared the cross mark in the party square. It does not indicate an intention on the part of the voters to cast their ballot for some and not all the candidates on the party ticket. There is no ground whatever for such an inference from the way the ballot is marked. It is idle to speculate upon the intention of the voters as to why they did the unnecessary act of placing marks opposite the names of three or four candidates on their party ticket. Whatever may have been their reasons they did not violate the statute nor render uncertain the candidates for whom they intended to vote, and thereby deprive themselves of the right to have their votes counted.

It will be observed that by an express provision of the statute the ballot cannot be rejected unless it is so marked as to make it impossible to determine the voter's choice. This is the only ground or reason for which a vote may not be counted. It is submitted that there is no difficulty in determining the choice of the voters from the marks placed on these ballots. The court may not annul the voter's choice by merely surmising that it is uncertain or doubtful when the ballot itself shows conclusively that neither doubt nor uncertainty exists as to the intention of the voter. No duly qualified voter can be deprived of his vote unless for the statutory reason, apparent on his ballot, that it is impossible to determine his choice. Here it is not only not impossible to determine the choice of the voters, but the ballots are marked so as to disclose clearly and unmistakably for whom each man intended to vote.

The latest utterance of this court upon the question before us is Dailey's App., 232 Pa. 540, which was decided in 1911. In an opinion filed by Mr. Justice STEW-ART, after stating that the voter may either vote a straight ticket by placing a cross mark in the party square, or accomplish the same result by placing a cross mark after the name of each candidate, it is said: "He may still employ either method with like definite results as before; he may adopt both without invalidating his ballot, but whether he adopt either or both, he has exhausted his privilege......This is the doctrine of Newberry Township Election, 187 Pa. 297, and we can discover no purpose in the amended Act of 1903 to make any change in this respect." The principle here announced rules the case in hand. The voter is permitted, the court says, to vote a straight ticket by placing the cross mark in the party square, or he may indicate his intention to vote for all the candidates upon the ticket by placing cross marks opposite their respective names, or he may vote for all the candidates upon the ticket by using both the cross mark in the party square and at the same time opposite the name of each candidate on the ticket. In other words, the fact that he places the mark opposite a candidate's name, in addition to putting it in the party square, does not invalidate the ballot. He may adopt either or both methods in expressing his intention on his ballot, says our decision, so long as the marks on the ballot do not express an inconsistency which, in the language of the statute, makes it impossible to determine his choice. As already pointed out, the marks set opposite the names of some of the individual candidates create no inconsistency with the voter's act in placing the mark in the party square which indicated his intention also to vote for the same candidates. The learned examiner and the court below were correct in holding that the principle announced in Dailey's App., 232 Pa. 540, rules the present case.

The conclusion of the court below is supported by

Spurrier v. McLennan, 115 Iowa 461, and Potts v. Folson, 104 Pac. Repr. 353, which were decided under statutes whose provisions are similar to our own statute. It was held in those cases that by marking in the party square, the elector voted for all the candidates in the column under the square, and that the extra markings were without effect. In the Iowa case the court said (p. 467) : "We may say, further, that crosses in the squares (opposite the names of some of the individual candidates) under such circumstances not only do not add to the effect of the mark in the square (at the head of the party column), but they do not detract from it, they have no consequence whatever, except in the case of a name written in, and that is specially provided for in section 1119 of the code."

For the reasons stated I would affirm the order of the Court of Quarter Sessions.