Windber Borough et al., Appellants, *v.* Spadafora

Argued September 30, 1946. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Archibald M. Matthews,* for appellant in No. 77.

*Charles H. Ealy,* with him *Uhl, Ealy & Uhl, Ralph
B. Umsted,* Deputy Attorney General, and *James H.
Duff,* Attorney General, for appellant in No. 78.

*Clarence L. Shaver,* with him *Budd B. Boose, Boose & Boose, Daryle R. Heckman* and *Shaver & Heckman,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 24, 1947:

This is an appeal from the decree of the court below dismissing the bill and refusing the prayer for an injunction. The officials of the Borough of Windber averred that the defendant, the owner of a lot of ground whose Northwestern boundary is Big Paint Creek, in that Borough, erected a building on her lot and projected its foundation wall into the creek, without authority from the Water and Supply Commission of Pennsylvania. The alleged encroachment consists of a solid wall extending into defendant's half of the bed of the stream a distance of between eleven and twelve feet. Plaintiff claimed that this so narrowed the channel that the creek has in flood season been unable to flow freely in its natural course, but has overflowed the banks, causing damage to property further up the stream, and requiring the Borough to expend large sums of money in dredging the channel.

The defendant's building wall erected in the bed of the creek became undermined by water and in the year 1940 defendant made an application to the Water and Power Resources Board [1] of the Commonwealth of Pennsylvania (hereinafter called the "Board") for permission to rebuild the wall in its old location in the bed of the stream. The Board after an investigation by its engineers disapproved the application and so notified the defendant on December 18, 1940. Defendant's building has by reason of the undermining of its foundation become unsafe for occupancy and the defendant declared

---

[1] This Board succeeded by the Act of June 25, 1913, P. L. 555, 32 PS 681, as amended by the Act of May 6, 1937, P. L. 559, 32 PS 681 (1945 Cumulative Annual Pocket Part, page 31) to the powers of the Water Supply Commission of Pennsylvania.

her intention to restore the foundation wall in the creek without a permit from the Board and without authority from the Borough.

Plaintiff asked for (1) an injunction restraining the defendant from rebuilding the wall in the bed of the creek without a permit from the Board, and (2) a mandatory injunction requiring defendant to remove that portion of the building which encroaches on the bed of the creek, and so to reconstruct her building that there will be no encroachment.

Later the Board obtained leave to join as party plaintiff for the reason, first, that "Obstructions in a stream of water are specifically placed under the jurisdiction of the Water and Power Resources Board under the Act of June 25, 1913, P. L. 555 as amended by the Act of May 6, 1937, P. L. 559 (32 PS section 681)" and, second, that "The interest of the public generally is involved in the proceedings", and, third, that the repairing of the obstruction in the stream had been passed upon by the Board and refused.

By way of answer defendant averred that the building upon the lot whose Northwestern boundary is the creek, was built more than 30 years before the filing of the complaint but without any action being taken by the municipal authorities or by any other officials, that the Borough of Windber had interfered with the natural course of the creek by erecting a retaining wall in it and thereby changed the channel and had so obstructed the channel as to narrow it above the premises of defendant, and it was only in 1936 when an unusual flood occurred that the creek overflowed the channel made by the Borough. The defendant pleaded that no encroachment was made by her or her predecessors in title on the channel of the creek and that the channel between her building and the building on the opposite side of the stream affords ample passage for its load of water. There are also averments as to other interference by the Borough with the natural bed of the creek by rea-

son of the erection in 1923 of a bridge up the stream a short distance from defendant's property. Defendant declared that she has not extended her line beyond the lines of the property she received in due course from her predecessors in title, that the plaintiff Borough never took any steps whatsoever to prevent the expenditure of large sums of money and labor necessary in the erection and construction of the building now on the property, that the plaintiff Borough is estopped by reason of its long acquiescence and laches from maintaining the present action, and that it is also estopped by reason of the action of the officers of the Borough of Windber in granting a permit to the owners and possessors of the property on the opposite side of the creek for the purpose of rebuilding the foundation walls under their building and thereby narrowing the channel of the creek and causing a deflection in the flow thereof so as to divert the current against the foundation walls of defendant's building.

The court below in dismissing the complaint found, inter alia, the following facts:

A. That prior to 1907 there was a stone foundation wall laid in the bed or at the Northwestern bank of Big Paint Creek on the premises now owned by defandant and that "the wall remained idle until the year 1912 or 1913, when the building was erected and completed . . .".

B. ". . . it is impossible at the present time to accurately ascertain and determine the northwesterly meandering line of Big Paint Creek as it existed at the time of the conveyance of the defendant's lot to her predecessor in title . . ." Before the creek reaches the lot of the defendant it passes under a concrete County bridge, constructed during the year 1923, replacing an iron bridge. The present bridge has a center concrete pier, which is 3½ feet thick and of the length of the width of the bridge. This pier divides the flow of the stream into two channels. This obstruction has nar-

rowed and restricted the channel of this stream to the width of 27 feet. During the normal flow of the stream the channel under and below said bridge is of sufficient width to carry away all the water flowing therein; but in times of extraordinary rainfall causing flood conditions, the channel of the stream is too narrow to permit the water to escape freely, with the result that the water is damned back and overflows the banks of the stream.

C. The flow of the stream has undermined the stone wall supporting defendant's building thereby making it unsafe, and unless the foundation wall is repaired the wall of the building will eventually fall to the bed of the stream, thereby creating a worse obstruction than exists at the present time. The court in its discussion correctly stated that: "A riparian owner on a non-navigable stream may construct therein, in front of his land, anything he pleases to the thread of the stream, unless it injures some other riparian owner or affects the public. . . . The Borough has . . . no ground to complain of the alleged encroachment, except in so far as the rights of the public are affected by the obstruction of the flow of the stream, causing the water to back up and overflow the public streets over which a borough has control, especially if it constitutes a public nuisance. In such event, the municipality has standing to seek injunctive relief to prevent such obstruction from interrupting the flow of water in the channel of the stream:" (citing cases)

"It is a familiar rule of equity jurisdiction that a court of equity will not grant injunctive relief in a doubtful case, and an injunction will be awarded only where the rights and the equity of the plaintiff are clear, and the threatened injury is of a permanent or irreparable character. (citing cases) . . . an injunction will not be granted where the Chancellor finds that the injunction would be ineffectual and not beneficial, or where it would be of greater injury than a refusal of it. In other words, an injunction will not be awarded where

the benefit to the claimant is disproportionate to the injury to the defendant." (citing cases)

The court then declared that: "The granting of the injunction [asked for] will be of no benefit to the plaintiffs, but will be very detrimental to the defendant. If the injunction is granted, the defendant will be restrained and enjoined from making necessary repairs to the stone wall under her building, with the result that the wall and building resting thereon will eventually fall into the bed of the stream, thereby creating a worse obstruction than exists at the present time. This anticipated result can be of no possible benefit to the plaintiffs and will destroy the defendant's property. . . . Neither the granting nor the refusing of the injunction can work a solution of the situation confronting both the plaintiffs and the defendant. If granted, the result will be as above stated; if refused, the defendant will nevertheless be prevented from making said repairs, because of the refusal of the intervening plaintiff to grant her a permit unless she intends to subject herself to arrest, indictment and conviction of a misdemeanor, with the penalty of a fine or imprisonment. Whether the injunction is granted or refused, it leaves the defendant in a helpless dilemma."

The court also found the Borough had been guilty of laches, the stone wall having been erected as early as 1907 and "Equity will not lend its aid to one who has slept upon his rights until the original transaction is obscured by the lapse of years and the death of the parties." (citing cases)

As to plaintiffs' request for a mandatory injunction the court said: "The courts apply the process of injunction with great caution, especially in the case of a mandatory injunction." (citing cases) The court also said the Borough has a "plain statutory remedy to correct and remedy this condition if it exists, as we think it does . . . and no reason has been shown why the Borough of Windber should not exercise its statutory rem-

edy, (under Article 22 of the Borough Act of May 4, 1927, P. L. 519, as amended by the Act of June 9, 1931, P. L. 386 (53 PS 14481)), to correct the condition complained of in the bill instead of asking the Court to compel the defendant by a mandatory injunction to widen the stream by removing the stone wall in question."

The court cited the case of *Commonwealth ex rel. v. Stevens et al.*, 178 Pa. 543, where this court said (p. 562) : "The right to widen and deepen the channel of the stream necessarily includes the right to appropriate legal process to prevent interference with the exercise of it." The court also said that there is "probably a stronger reason" why a mandatory injunction should not be granted in this case. This was based upon the fact that by erecting the concrete county bridge over the stream above defendant's property the stream's flow was obstructed. Also, a "baffle wall" for the protection of the sewer outlet into the stream above defendant's property had a tendency to obstruct the flow of water in the stream. The court added: "All these obstructions combined have a retarding effect in the flow of the stream under and below said bridge; and during high water cause the water under the bridge to eddy, whirlpool and even flow upstream. . . . Where the evidence is conflicting and it cannot be definitely determined whether the obstruction complained of causes the flooding of the streets, a mandatory injunction will be refused: Scranton City v. Scranton Steel Co., 154 Pa. 171. . . . No evidence has been introduced showing the cost of removing the wall in question, but it may be assumed that it will be expensive and burdensome to the defendant, if she is required to remove it, as it will necessitate the tearing down of part of the building resting thereon. A mandatory injunction is a matter of discretion with a court of equity, and it will not be granted to remove a building or tear down a wall when it will operate inequitably or oppressively." (citing case)

The court denied the relief asked for and dismissed the bill, but while referring to it the court neither dis-

cussed nor appraised the board's refusal of defendant's application for permission to reconstruct the wall. The Act of 1913, section 2, as amended by the Act of 1937, makes it unlawful for any person "to construct any dam or other water obstruction . . . or in any manner to change or diminish the course, current . . . of any stream or body of water, wholly or partly within . . . this Commonwealth, except the tidal waters of the Delaware River and of its navigable tributaries, without the consent or permit of the Water and Power Resources Board, in writing, previously obtained, upon written application to said Board."

Section 5 as amended in 1937 provides that the Board can make an investigation of any dam or other water obstruction and it authorizes the Water and Power Resources Board "to hold hearings, subpœna witnesses," etc.

The Ace of 1937 amended only sections 1, 2, and 5 of the Act of 1913. Section 4 of the latter Act provides that "the Commission shall have power to grant or withhold such consent or permit" to change or obstruct a water course, and section 5 provides that the owner of any structure which is impeding the flow of water in the stream who is notified to remove the obstruction and refuses to do so the Board can do so and thereafter recover in the name of the Commonwealth the cost or expense of doing so.

Section 7 provides that if any person, etc., shall do anything contrary to the provisions of the Act or fail to comply with any order of the commission, he shall be guilty of a misdemeanor; and, upon conviction thereof, shall be sentenced to pay a fine of not more than one thousand dollars, or, he may be sentenced to imprisonment for a period not exceeding one year, either or both, in the discretion of the court.

Section 8 of the Act of 1913 provides: "Upon application of the commission, verified by oath or affirmation, the court of common pleas of any county, sitting in

equity, may, by injunction, enforce the compliance with, or restrain the violation of, any order or notice of the commission made pursuant to the provisions of this act, or restrain the violation or attempted violation of any of the provisions of this act."

There is nothing in the Act of 1913 or in its amendment in 1937 which gives any person any right of appeal from the decisions of the Water and Power Resources Board.[2]

The extent of the power of the courts to review either by mandamus proceedings or by writ of certiorari the action of administrative officials who exercise quasi-judicial functions is not now before us.[3]

In this case no denial is made of the averment in plaintiff's bill that the Water and Power Resources Board held a "full hearing" on the application of the defendant for permission to repair and rebuild the wall under the building in the same location as previously existing, and with the same encroachment upon the bed of Big Paint Creek. Since it is clear that the defendant never obtained the permit required by section 2 of the Act of 1913, aforesaid, as amended by the Act of 1937,

---

[2] This is in contrast to the Water Rights Act of June 14, 1923, P. L. 704, 32 PS 591, as amended on June 24, 1939, P. L. 842, 32 PS 631, which provides in section 10 that "Any party aggrieved by any decision of the board under any of the provisions of this act, may, within thirty days, appeal therefrom to the court of common pleas of Dauphin County, and the taking of such appeal shall operate as a supersedeas." The Sanitary Water Board Act of April 9, 1929, P. L. 177, as amended June 21, 1937, P. L. 1865, 71 PS 540, provides in section 11 for an appeal from "any order or decision under the Act, of the Commissioner of Health, or that of the Governor, Attorney General and Commissioner of Health". These Water Rights Acts and the Sanitary Water Board Acts, however, have no bearing on the instant case.

[3] As to the extent of judicial review on writs of certiorari, see *Rimer's Contested Election; Geary's Appeal*, 316 Pa. 342, 175 A. 544; and *Foy's Election*, 228 Pa. 14, 76 A. 713. See also *Grime v. Dept. of Public Instruction, et al.*, 324 Pa. 371, 376; *Hotel Casey Co. v. Ross et al.*, 343 Pa. 573 and 14 Corpus Juris Secundum, section 46, pp. 194 and 195.

it follows that the plaintiff is entitled to the decree we now enter.

The decree appealed from is reversed and the record is remitted with instructions to reinstate the bill and, until further order from the court below, to enjoin the defendant from repairing, rebuilding, or renewing the wall of her building in any manner which will maintain or continue the encroachment upon the bed of Big Paint Creek until the defendant shall first have obtained the required permit from the Water and Power Resources Board. Each party will pay her or its own costs.