## Searfoss v. Whitehaven Borough School District

*Conrad A. Falvello*, for plaintiffs.

*Albert F. Maier* and *Nelson A. Bryan*, for defendants.

LEWIS, J., June 16, 1959.—This matter comes before the court on defendants' preliminary objections con-

taining a motion for a more specific complaint, motion to strike complaint and a demurrer.

Plaintiffs, Lola K. Searfoss, Wilbur Nauman and Robert Feist, taxpayers of the School District of the Borough of White Haven, filed a complaint in equity "in behalf of themselves and in behalf of such other taxpayers of the said defendant School District as may desire to join [herein]."

Defendants are the School District of the Borough of White Haven, the individual officers and members of the board, the treasurer and tax collector of the district, the Central Luzerne County Joint Board, of which the School District of the Borough of White Haven is a member, and the Central Luzerne County Joint School Municipal Authority.

Plaintiffs seek to restrain defendants from collecting an additional four mills tax and a $5 per capita tax, both of which have been in force for the years 1956-1957, 1957-1958, 1958-1959, restraining the payment of any money to the joint board or the authority and requiring the joint board and the authority to refund any moneys collected by them, or either of them, from the White Haven School District.

Paragraph 19 of the complaint reads as follows:

"It is averred that more than 60 percent of the people and taxpayers of the said School District have opposed and presently oppose the said Joint School District or Board."

The original plaintiffs remain the only plaintiffs in the case, no other taxpayers of the School District of White Haven having joined in the action.

The action is essentially an attack on the constitutionality of the statute authorizing the formation of joint school boards. Plaintiffs contend that the act under which the jointure was set up is unconstitutional because it permits an unlawful delegation of authority by the member school districts, and consequently, all

taxes collected and paid over to either the board or the authority are void.

No question has been raised as to the validity of the procedure by which the School Board of White Haven became part of the jointure. Consequently, the only substantial question involved is the constitutionality of the statute permitting such jointure. This is a very serious question and to declare the statute void would have far reaching consequences. A great number of school districts of Pennsylvania, by reason of economic necessity and educational advantages, have formed jointures for the benefit of the pupils and taxpayers of the districts.

"To construe a statute, if at all possible, so as not to render it unconstitutional, is our bounden duty. Statutory Construction Act of May 28, 1937, P. L. 1019, Section 52(3), 46 PS §552(3)": Parente Appeal, 390 Pa. 249, 253.

A statute should not be declared unconstitutional unless it violates the constitution clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in the mind of the court: L. J. W. Realty Corp. v. Philadelphia, 390 Pa. 197; Bilbar Construction Company v. Easttown Township Board of Adjustment, 393 Pa. 62. All presumptions are in favor of the constitutionality of acts and courts are not to be astute in finding or sustaining objections to them: Bilbar Construction Company v. Easttown Township Board of Adjustment, supra; Hadley's Case, 336 Pa. 100.

With these principles in mind, we come to consider the constitutionality of the present statute: Public School Code of March 10, 1949, P. L. 30, sec. 1701, 24 PS §17-1701, et seq., as amended. While this question has never been passed upon by the appellate courts so far as the briefs of counsel and our independent research has disclosed, there are some lower court cases which have upheld its constitutionality: Jumper

v. School District, 5 Cumberland 34; Emlen v. School District of Whitpain Township, 66 Montg. 338.

Likewise there is persuasive language in our appellate decisions tending to that conclusion. " 'In Detweiler v. Hatfield Borough School District, 376 Pa. 555, 566, the Supreme Court said "equally unfounded are appellant's objections that the jointure contract was unenforcible because . . . it deprived future school directors of discretions in the management of school affairs" ' ": Slippery Rock Area Joint School System v. Franklin Township School District, 389 Pa. 435, 443, 444. In our opinion, a claim that a jointure constitutes a deprivation of discretion as to future school directors differs little from a claim that a joint authority constitutes an unwarranted delegation of authority.

Article X, sec. 1, of the Constitution of Pennsylvania provides as follows:

"The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public schools, wherein all the children of this Commonwealth above the age of six years may be educated, and shall appropriate at least one million dollars each year for that purpose."

In accordance with that mandate, the legislature from time to time has adopted laws providing for the establishment of public schools, the last of which was the Public School Code of 1949, 24 PS §1-101, et seq. In that code there is a provision (24 PS §17-1701), which was amended in 1953, which permits the organization of a jointure such as is involved in this case. Plaintiffs contend that by voting for a jointure, the school board has given away certain of its powers and placed them beyond its control, particularly the power of taxation. They cite in support of their position Wilson v. Philadelphia School District, 328 Pa. 225. The question there involved was whether an ap-

pointive body should have the power of taxation. The decision, negativing such power, is not controlling in the instant matter.

The pertinent portions of the statute are as follows:

"The board of school directors in any two or more school districts may . . . [with certain approval] establish, construct, equip, furnish, and maintain joint elementary public schools, high schools, consolidated schools or any other kind of schools or departments provided for in this act. The cost of establishing, constructing, equipping, furnishing, and maintaining such joint schools or departments, including the cost of transportation of pupils, shall be paid by the several districts establishing the same, in such manner and in such proportion as they may agree upon . . .": Section 1701, 24 PS §17-1701.

"Any school district joining in the establishment of a joint school or department, as herein provided, shall have the same power to raise the necessary funds to pay its share of establishing and maintaining such joint school or department as it has to raise funds to establish and maintain any public school": Section 1702, 24 PS §1702.

The affairs of the joint school district shall be administered by all of the boards meeting together (24 PS §17-1704) or by a joint committee consisting of one member of each board constituting the jointure: 24 PS §17-1707.

The principal argument advanced in the Wilson case, and the one on which the decision turned, was that the voters of the district were deprived of an opportunity to select those who fixed the taxes. That is not the case here. As will be seen from a reading of the statute, the school board or its duly appointed representatives have a voice in the control of the joint school district in fixing the amount to be expended and the proportion to be paid by each district. The school

directors of the individual districts then set the millage and the per capita tax to be paid by the taxpayers of their district. These directors are still answerable to the electorate and may be voted out of office if their acts displease a majority of the voters in the district.

In our considered judgment, therefore, under the statute by authority of which the present jointure was effected, there remains in the electorate reasonable control over the acts of the board and, as a consequence, we are satisfied that the statute does not authorize an unreasonable delegation of authority. Accordingly, we declare the statute to be constitutional.

The other relief sought by plaintiffs relates to an increase in the tax rate, the imposition of a per capita tax, the collection of the taxes in the past and to the return of moneys paid to the joint board and the authority. We are convinced that these plaintiffs have no standing to bring such an action at this time because of the long delay in raising the question: Wilson v. Philadelphia School District, supra.

The tax increase and the per capita tax, both of which are now alleged to be illegal and excessive, were first levied for the school year 1956-1957. The same millage and per capita tax were levied for the year 1957-1958, and the current year, 1958-1959. It was not until February 9, 1959, that this complaint was filed. By that time all but $457.80 of the duplicate for the year 1956-1957 had been collected, all but $429.97 of the duplicate for the year 1957-1958 had been collected, and the taxes for the year 1958-1959 were in process of collection. We take judicial notice of the fact that for this latter year, the tax collector, on May 1, 1959, filed a return in the Tax Claim Bureau of the County Commissioners' Office, showing that he had collected all but $689.41 of the duplicate. In each of the years mentioned the total of taxes shown on the duplicate amounted to over $20,000.

It is important to note that although this complaint was filed February 9, 1959, no temporary injunction was requested and no rule to show cause why a preliminary injunction should not be granted was asked for. Plaintiffs apparently were willing to allow the collection of the allegedly illegal taxes to continue until this action could be disposed of, knowing that several months must elapse before a final adjudication. In the meantime, all but about four percent of the taxes for the current year were collected.

Aside from the constitutionality question raised in this complaint, if there were any merit to the objections raised therein, and we feel there is none, we think that this is a proper case for the application of the doctrine so concisely set forth by Flannery, J., in the case of Kowalczyk v. Buyanoski (No. 2), 17 D. & C. 2d 512, in which he says, page 516:

"An injunction should not be granted where the chancellor finds that the injunction would be ineffectual and not beneficial, or where it would be of greater injury than a refusal of it: Windber Borough v. Spadafora, 356 Pa. 130; Hamilton v. Foster, 272 Pa. 95; Smith v. Rowland, 243 Pa. 306. And when the issuance of an injunction will cause serious public inconvenience or loss, without a corresponding great advantage to the complainant, no injunction will be granted even though complainant would otherwise be entitled to its issuance. Stellwagon v. Pyle, 44 Del. Co. 17, affirmed 390 Pa. 17."

Although the increased millage and the imposition of the per capita tax were effective about the time the White Haven School District became a part of the joint board, we cannot attribute the tax entirely to that fact. The legislature, by an act approved by the Governor on June 1, 1956, further amended the Public School Code by providing for increases in teachers' salaries, but made no provision for a corresponding increase in State appropriations. From all that ap-

pears in this complaint, the increased taxes complained of may well have been caused by that fact.

There is a further reason why this action is brought too late. The school board adopted a budget and levied taxes for the year 1956-1957 some time prior to July 1, 1956. The budget provided for payments to the joint board and the authority. It also anticipated the increased millage and the per capita tax. This budget was adopted after public notice and time for inspection by the public: 24 PS §6-687. There was no protest of the budget that appears on this record, and no action to restrain the levy or collection of the taxes or the expenditure of the money. The same thing occurred in the years 1957 and 1958, all without any action by these plaintiffs or others. Nor was any appeal taken by anyone from the audits for those years. To now permit the recovery of moneys paid to the joint board and the authority in good faith, would be inequitable and unjust not only to those bodies, but to the component school districts who have made the required contribution. The failure timely to take the appropriate steps convicts these plaintiffs of such laches as to be a bar to this action.

A question concerning the good grace in which the present action has been instituted arises from the fact that plaintiff, Lola K. Searfoss, whose name appears first in the list of three plaintiffs, is one of the auditors of the Borough of White Haven. She signed the audit which was filed in the year 1958. In that audit there appeared items of moneys collected from the increase of the millage to 31 mills, and also from the per capita tax.

Among the expenditures were those to the joint board and to the authority. This audit was approved by plaintiff Searfoss, without protest, although she had the power to surcharge the directors at that time. There was no appeal from the audit, so we must

assume that it was satisfactory to the citizens of White Haven. The delay of all of plaintiffs, and particularly plaintiff Searfoss, is clear proof of such laches that the relief they now seek should be denied.

" '. . . nothing can call forth the court of chancery into activity but conscience, good faith and reasonable diligence: Kinter v. Com. Tr. Co., 274 Pa. 436. The doctrine is founded on the equity maxim that "equity aids the vigilant, not those who slumber upon their rights" ' ": Riley v. Boynton Coal Co., 305 Pa. 364, 368.

In view of all of the foregoing, it is our opinion that plaintiffs have failed to state a cause of action and, as it is apparent that the factual situation cannot be changed by amendment, no useful purpose would be served by granting permission.

We need not consider the question raised by the motions for a more specific complaint or to strike the same from the record for technical defects.

Now, therefore, June 16, 1959, at 11 a. m., the preliminary objections in the nature of a demurrer are sustained and the complaint is dismissed.