## Appel Vending Co., Inc. v. Philadelphia Vendors, Inc.

*Samuel Rappaport*, for plaintiff.
*Abe Lapowsky*, for defendants.

SPAETH, J., November 7, 1966. — Defendants' preliminary objections to this complaint in equity admit the following facts:

Plaintiff installs and rents juke boxes. On June 22, 1965, plaintiff made a contract with defendant Blue Kitten, which is a taproom owned by defendants Fred and Luphemia Greaves. A copy of the contract is attached to the complaint. According to the contract, the Blue Kitten leases space to plaintiff for the operation of juke boxes. As rent, plaintiff is to pay Blue Kitten half of the money taken each week from the juke boxes' coin boxes, as long as $68 or more is taken from the boxes; if less than $68 is taken, plaintiff keeps the first $34, whether or not this leaves anything for the Blue Kitten. Plaintiff retains title to the juke boxes and "may remove or change" them "at any time during the term" of the contract, which is stated to be five years. If the Blue Kitten breaks the contract, it is to pay plaintiff as liquidated damages "a sum equal to the average weekly share" of the amount taken from the juke boxes, "multiplied by the number of weeks remaining in the unexpired term" of the contract, but not less than $1,500. To collect these damages, plaintiff is "authorized to confess judgment against [the Blue

Kitten] ... with costs of suit, waiver of errors, without stay of execution, and with 20% added for collection fees...."

The contract says nothing about how many juke boxes plaintiff was to install. The complaint says plaintiff installed two.

About two weeks after the juke boxes were installed, defendant Philadelphia Vendors, Inc., which competes with plaintiff, and of which defendant Frank Harmon is an officer and shareholder, persuaded the owners of the Blue Kitten to disconnect plaintiff's juke boxes and to make a contract with Philadelphia Vendors, under which Philadelphia Vendors installed its juke boxes in the Blue Kitten.

The preliminary objections say that plaintiff has an adequate remedy at law and that plaintiff's contract with the Blue Kitten is unenforceable, for various reasons.

So far as plaintiff's claim against the Blue Kitten and its owners is concerned, plaintiff admits that Unit Vending Corporation v. Los, etc., 71 D. & C. 606 (Philadelphia C. P. No. 1, 1950), is against it, but it urges that there is no Pennsylvania appellate case in point, which is so, and relies upon the decision by the Maryland Court of Appeals in Stamatiades v. Merit Music, 210 Md. 597 (1956), where a juke box owner did obtain a decree enjoining a restaurant from using someone else's juke boxes. However, Stamatiades is so different from the present case that it is not in point.

In Stamatiades, the court, quoting an earlier decision, said that the principal reason for its decision was that:

"The damages which might be sought to be recovered in a court of law would be practically impossible of ascertainment, because of the difficulty of determining in advance the quantity of the commodities which will be used, and, further, the impossibility of determining

in sums of money the damage which would result to the appellant by losing the advertisement of its own goods and having that of a competitior's substituted at the appellee's place of business": 210 Md. at 604.

This practical impossibility arose from the fact that the liquidated damages clause was:

". . . Applicable only in case of the sale or transfer of the [restaurant] business": 210 Md. at 605.

There is no such difficulty here where, assuming that the contract is enforceable, the liquidated damages clause not only makes it easy to ascertain plaintiff's damages, but authorizes plaintiff to confess judgment for the damages.

In Unit Vending, the court said:

"Plaintiff merely owns and furnishes mechanical devices for the sale of cigarettes, and others put out like machines, but the product sold through all the machines is the same, namely, cigarettes made by a variety of manufacturers. The use of one machine or another for the sale of the same product cannot be said to work an irreparable injury to plaintiff. Plaintiff was not injured by defendant's failure per se to use this machine. Its injury is simply that defendant failed to sell cigarettes to be furnished by plaintiff for the term of the contract. Plaintiff's damage in that situation is readily ascertainable by taking the average sales prior to the breach as a basis of computation": 71 D. & C. at 611.

The court, therefore, refused to issue an injunction, but did award pecuniary damages: 71 D. & C. at 612. The court's reasoning is applicable here and will be followed.

Furthermore, in Stamatiades, there were equitable considerations that are not present here. The contract recited that it was made in consideration of a $3,000 loan by the juke box owner. The loan was, indeed, the "major objective" of the restaurant owners in agreeing to the contract, for they wanted to enlarge their

restaurant. Thus, they were in the position of repudiating a contract that they had sought for their benefit: 210 Md. at 601, 608. Here, no such special consideration is alleged; nor, it would seem, at least without more facts than are pleaded now, could any such consideration be alleged, for none appears from the contract, which provides that it "contains all the agreements of the parties, there being no other reservations or understandings". Also, in Stamatiades the juke box owner could only replace machines or decrease the number if necessary (210 Md. at 612-614), while here, the contract provides that plaintiff "may remove or change the [juke boxes] at any time."

In Unit Vending, the court observed, quoting from Windber Borough et al. v. Spadafora, 356 Pa. 130, 134 (1947), that:

" 'It is a familiar rule of equity jurisdiction that a court of equity will not grant injunctive relief in a doubtful case, and an injunction will be awarded only where the rights and the equity of the plaintiff are clear, and the threatened injury is of a permanent or irreparable character' ": 71 D. & C. at 609.

And the court added that:

"The underlying rationale of the principle is the concept that courts will not interfere with a man's freedom of action unless it is contrary to public interest or the damages resulting from his action or inaction are irreparable because not ascertainable": 71 D. & C. at 612.

Since here, plaintiff's damages for the claimed breach of contract by the Blue Kitten are readily ascertainable, and since plaintiff's claim presents no clear equity, the claim should be on the law side.

The same considerations apply to plaintiff's claim against Philadelphia Vendors, which can be resolved in a trespass action: Dora v. Dora, 392 Pa. 433 (1958); Prosser on Torts, §123 (3rd ed., 1964).

This court will not decide now whether plaintiff's contract with the Blue Kitten is enforceable. Plaintiff will be obliged to file two complaints, one in assumpsit against the Blue Kitten, and one in trespass against Philadelphia Vendors. It is not clear now how these complaints will read. If, after the complaints are filed, defendants still consider that the contract with the Blue Kitten is unenforceable, they may raise the point by an appropriate pleading.

Accordingly, the court enters the following

### ORDER

And now, November 7, 1966, defendants' first preliminary objection, that plaintiff has an adequate remedy at law, is sustained, and the complaint is dismissed, with leave to plaintiff to file a complaint in assumpsit and a complaint in trespass within 20 days, in accordance with the opinion accompanying this order, and without prejudice to defendants' right to plead as may be appropriate in support of their claim that the contract is not enforceable.