### Craig v. Schwartz

*Charles M. Fink,* for plaintiffs.

*Charles H. Dorsett, Jr.,* for defendants.

BODLEY, J., October 30, 1969.—Plaintiffs seek in this equity action to restrain defendants from obstructing a right-of-way which passes over defendants' property in Buckingham Township, this county, and serves plaintiffs' property. Plaintiffs further seek an order which would require defendants to remove certain improvements which are alleged to constitute an encroachment upon the right-of-way. Following the hearing, the chancellor visited defendants' property in order that he might become better acquainted with the physical characteristics of the land, the improvements thereon and the existing roadway. Counsel's respective requests for findings of facts, conclusions of law and briefs in support thereof have been reviewed. From the testimony received, there follows hereunder a summary of the facts of the case as found by the chancellor.

A common grantor of both plaintiffs and defendants, one William D. Stear, in a conveyance dated April 17, 1942, and recorded in deed book 710, p. 247, etc., reserved to himself, his heirs and assigns, and to ". . . such other parties as may have a right to use . . ." the same, a right-of-way which traversed in part over the land now owned by defendants and in part over lands now owned by others, not parties to

this suit, to the lands presently owned by plaintiffs. This right-of-way was described by means of courses and distances only, and in words of apparent art as used by engineers and surveyors. It was referred to as ". . . being approximately thirty-three feet in width . . ." but, of course, its perimeters were not defined.

The chancellor finds as a fact that under then existing engineering practice the courses and distances of the described right-of-way designate the center line of the easement. Curiously, both exhibit P-3, being a plan prepared for the original grantor of the easement in 1942, and exhibit P-1, being a plan prepared for plaintiffs in 1968, corrected in 1969, reveal that the beginning point of the center line of the easement on North Mountain Road is at a corner of defendants' lands where they join the lands of another person not a party to the action, which lands were not owned by the common grantor at the time the easement was created by deed. Accordingly, as shown on both plans, a substantial portion of the easement, were it to be considered 33 feet in width as called for in the grant, would be physically located upon the neighboring property.

Both the testimony received at the hearing, as well as the reservation in the Stear deed itself throw some light on this unusual circumstance. The reservation of the right-of-way states, inter alia, that the grantor, the grantees and their heirs and assigns shall have the right to use the way ". . . jointly with other parties entitled to the use thereof, including . . . such other parties who have obtained a prescriptive . . ." right thereto. The testimony makes it rather clear that this way had been used for many years before the easement was defined by courses and distances. It might therefore be safely assumed that the surveyor who prepared the description in 1942 followed the

approximate center line of a then existing and used cartway without regard to the fact that at its beginning, and for some distance to the southeast, the established way was not entirely upon the land of the creator of the record easement.

In 1948, defendants acquired title to 1.179 acres of the former Stear property, which acreage fronts upon North Mountain Road, the inception point of the easement. Their deed carefully stated that the grant was "under and subject to such rights as others have in the right of way *as it now exists* and laid out across the premises herein conveyed." (Italics supplied).

Defendants' testimony, which we accept and which is not challenged by plaintiffs, is that they were not aware of the precise location of the easement created by grant, although they, of course, observed on the land the location of the way as it was then, and apparently still is now, occasionally traveled. Under these circumstances, defendants from 1948, and over a period of approximately 19 years, improved their property by the installation of an eight-inch cinderblock retaining wall approximately 30 inches in height, the planting of boxwood hedges immediately above the wall, which hedges are now approximately five feet in height and width, and by the planting of a line of blue spruce trees, which are now eight to 10 feet in height. A substantial sum of money and much labor was thus expended. All of these improvements, were the right-of-way in question to be considered 33 feet in width, would encroach upon the way.

By deed dated March 8, 1968, plaintiffs acquired title to approximately 11.712 acres of the former Stear land located somewhat to the rear of defendants' property and not contiguous to it. The only access to plaintiffs' land is the right-of-way which we are here discussing. They desire to construct one or more dwell-

ing houses on their property and seek to have the right-of-way legally established as being 33 feet in width, which width, they maintain, is essential for the passage of two-way traffic to and from their property, as well as for the installation of utility lines thereto and for reasonable access by large construction equipment. Necessarily, they ask that the alleged encroachments be removed.

Accepting, as we do, the fact that the described course of the record easement is that of the center line, it becomes immediately apparent that this court cannot grant plaintiffs that which they seek. The creator of the easement simply could not spread it over land which he did not then own, and the issue of possible prescriptive right to use the adjoining land is not before us. Hence, this court is without power to recognize in this action the existence of a right-of-way of the width declared in the grant until that point is reached midway along defendants' western boundary line where the described course of the easement turns to the east and thus locates the entire 33-feet width entirely upon land formerly owned by Stear. Our inquiry then must be directed to the question of the extent to which plaintiffs should be entitled to use that portion of the easement which, in fact, is located upon defendants' lands.

The platted easement is such that were these plaintiffs to be granted the full use of that portion of a 33-feet easement located physically upon defendants' land, that is to say, 16½ feet in width at the very point of beginning at North Mountain Road and gradually extending in width southeastwardly to the point of turn where the entire 33 feet, as noted heretofore, would then be entirely upon defendants' land, destruction of defendants' wall in its entirety, as well as all of the boxwood hedge and blue spruce would be required. Even if this use were to be restricted to the

existing cartway of approximately eight feet lying between defendants' property line and their wall to the point of turn, and then widened to the requested 33 feet, a substantial portion of defendants' wall, boxwood hedge and blue spruce would nonetheless be destroyed.

It is axiomatic that equity will grant equitable relief only where the rights and equities of the parties are clear and where the injury alleged is permanent and irreparable. Relief will not be granted, at least to the fullest extent sought, where to do so would cause greater injury than that which would follow its refusal: Windber Borough v. Spadafora, 356 Pa. 130, 134-35 (1947). Where the action of the party against whom the equitable relief is sought is found to be intentional or tortious, this rule does not apply, and in such case, even though the granting of the relief will cause the greater injury, it will be done: Peters v. Davis, 426 Pa. 231, 237 (1967).

It is not questioned in the matter before us that defendants acted in good faith over the 19-year period during which the costly improvements were installed. When they purchased their property in 1948, they were aware of the existence of a right-of-way, visible to the eye, which was used but infrequently over the years by persons seeking to reach the interior lands. They had no survey made at that time nor subsequently, and although they had constructive notice of the stated 33-feet width of the recorded easement, the chancellor found that they did not have actual notice. Their encroachment upon the platted easement was thus unintentional. They acknowledge the right of plaintiffs and others to use the way, but protest the alleged need to widen it so as to permit two way traffic and, more particularly, they object to a width of 33 feet which, we may note, is the lawful minimum width of public roads in a second class township: Act

of May 1, 1933, P.L. 103, art. XI, sec. 1103, added July 10, 1947, P.L. 1481, sec. 16, as amended, 53 PS §66103.

Clearly, plaintiffs are entitled to pass over defendants' land in order to reach their newly acquired property, and they should at all times be afforded reasonable access thereto. But, we think, under the circumstances of this case it would be grossly inequitable to grant plaintiffs the full relief they seek.

The grant of an easement is to be construed favorably to the grantee, and includes whatever is reasonably necessary for the enjoyment of the thing granted: Hammond v. Hammond, 258 Pa. 51, 56 (1917); Taylor v. Heffner, 359 Pa. 157, 163 (1948). If the character and extent of the easement is expressed in plain language, the deed speaks for itself: Walker v. Walker, 153 Pa. Superior Ct. 20, 25 (1943). But, while this is so, it must be remembered that the words of a grant of easement are to receive a reasonable construction in accordance with the presumed intention of the parties, and the use of the servient tenement by the owner of the dominant estate must be restricted to that which is reasonable under all the circumstances: Taylor v. Heffner, supra, at p. 163. He may do whatever is necessary to make the easement passable and useable for the purposes named in the grant, but cannot use the easement for purposes which are different from those for which it was created; nor are the grantee's rights within the easement boundaries unlimited: Brahm v. Township of McCandless, 44 D. & C. 2d 475, 479-80 (1967). The owner of the servient tenement, too, is entitled to use the area of easement as he chooses, just so he does not interfere with its proper and reasonable use by the owner of the dominant tenement: Taylor, supra, at pp. 163, 164; Hammond, supra, at p. 56.

We disagree with the proposition urged by defend-

ants that in some manner extinguishment should be found upon the principle of estoppel by reason of the failure of plaintiffs' predecessors in title to protest, as encroachments, the gradual improvements made by defendants, and by the nonuser of the area encroached. This is not enough. See 25 A.L.R. 2d 1265 Anno; Loss of Easement; Restatement, Law of Property §505, pp. 3082-83. Notwithstanding such failure to protest, the right of easement remains. Mere acquiescence or mere nonuse, no matter how long either or both persist, absent a finding of adverse possession or user, will not result in extinguishment of an easement created by deed: Graham v. Safe Harbor Water Power Corporation, 315 Pa. 572, 574-75 (1934). There is no evidence here which would tend to indicate continuous, adverse, visible and notorious possession of the entire area in question for a period of 21 years or more, and we find no abandonment. There is no evidence of intent to abandon the easement which, under Pennsylvania law, must be found before abandonment may be declared. See Hatcher v. Chesner, 422 Pa. 138, 141 (1966).

The guiding principle in a case such as this, we think, is found in the term "reasonableness." In both Hammond and Taylor, supra, the court did not concern itself with the specific width of the easement set forth in the grant; 20 feet in the first instance and 40 feet in the second. Rather, the court held that the owner of the dominant tenement was entitled to, and must be secure in, the use of a reasonable right-of-way over the servient tenement. So, too, in the case of Baptist Church in the Great Valley v. Urquhart, 406 Pa. 620 (1962), the court found that the enforcement of a 30-foot easement under the circumstances would create unnecessary harm to the owner of the servient tenement, and accordingly held that the owner of the dominant tenement was entitled

to but a reasonable use of the land subjected to the easement which, incidentally, restricted passage to one-way vehicular traffic over a portion of the way. In such a manner, equity can be done to all parties. See page 628.

In the case before us, the existing passage way upon defendants' land from the roadway to the point of turn past the block wall, hedges and blue spruce, affords adequate and reasonable passage to vehicular traffic. Moreover, it would seem that in addition to this 8 to 10-feet wide area of passage, the existing way spreads across onto the adjoining property, as indicated heretofore, just as it no doubt did in 1942, when it was surveyed for Mr. Stear and the plan prepared. It will be recalled in this connection that the center line of the way actually starts at the point marking a corner of defendants' land and that of his neighbor.

We need not concern ourselves here with the question of whether or not that part of the visible roadway which traverses the neighboring lands shall remain forever open to plaintiffs and others by way of prescriptive right, as suggested in the wording of the grant of easement itself. Nor do we think that there is any significance in the fact that the established way over defendants' land to the point of turn mentioned heretofore and for some little distance thereafter deviates somewhat, at or about the point of turn, from the courses and distances laid out in the deed reservation. No great benefit could be claimed by plaintiffs in securing the right to make the turn at a point where the wall, shrubbery and trees would necessarily be sacrificed to this right. And they suffer no harm so long as the alternate route provides reasonable and adequate passage, which we find to be the case.

Accordingly, we believe that substantial justice

will be done both parties by providing, as we do, that plaintiffs' use of the easement upon defendants' land to the existing point of turn should be restricted to the existing cartway as it presently is laid out adjacent to the cinder block wall. Necessarily, this will provide for one-way rather than for two-way traffic as plaintiffs wish, but we think that this is adequate and reasonable under all of the existing circumstances. Further, we believe that from the present point of turn and proceeding in a generally northeasterly direction to that point immediately past the last spruce tree where the existing passage way joins and conforms to the described way upon the lands of defendants, plaintiffs should be entitled to utilize such part of the described 33 feet way as they may desire, excepting only that area taken by the spruce trees and the area immediately to the north thereof. And from that point onward to the point where the described way leaves defendants' lands, plaintiffs should have full use of such part of the 33-feet way as they may see fit. In this manner, plaintiffs shall be afforded a reasonable use of the easement and the damage done to defendants' property, both aesthetically and financially, shall be minimized.

Accordingly, we conclude, as a matter of law, that the easement described in the record grant exists, as thus limited, for the benefit of these plaintiffs and all others who are lawfully entitled to use the same. It has not been abandoned nor has it been extinguished by estoppel or otherwise.

## DECREE NISI

And now, October 30, 1969, plaintiffs shall henceforth be entitled to the reasonable use of a 33-feet right-of-way over the lands of defendants, as described in deed book 710, p. 247, etc., excepting only that portion of the said way upon which there is presently located defendants' wall, boxwood hedge

and row of spruce trees, and the lawns and gardens immediately to the east and north thereof. By way of implementation thereof, defendants are ordered and directed to forthwith cause a survey to be made of the easement, as redefined herein, with a width of not less than 8 feet at the point of beginning, not less than 15 feet at the angle of turn, and thereafter gradually increasing in width until that point is reached, past the last existing spruce tree, where the full width of 33 feet may be utilized consistent with this adjudication. Said survey shall be made at the expense of defendants, shall define the perimeters of the area of the right of way, and shall, in addition, be platted upon a plan. Upon submission of a copy of the description and plan, with appropriate stipulation of counsel, the same shall be made a part of this record by supplementary order of the chancellor. All costs of these proceedings shall be borne by defendants.

If no exceptions to this adjudication and decree nisi are filed within 20 days after notice of filing, the decree nisi shall be entered by the prothonotary on praecipe as the final decree.