In re Contested Election of Frank T. Redman, Justice of the Peace of Braddock Borough. Frank T. Redman's Appeal.

[Marked to be reported.]

*Elections—Ballot law—Marking ballots—Act of June 10, 1893.*

If an elector desires to vote for any of the persons whose names are printed on the official ballot, he must do so by " marking " as directed by the act of June 10, 1893, P. L. 419. If he wishes to vote for persons whose names are not already on the ballot, he can do so by " inserting " their names in the blank spaces prepared therefor. In so far as the mode of voting is thus specifically prescribed by the act, all other modes are by necessary implication forbidden.

Where a voter votes for a person whose name is printed on the ballot by marking with a cross opposite to such person's name, he has no right to insert the same person's name in the blank space provided exclusively for names not already on the ballot. If he does so, he vitiates his ballot and it will not be counted. The presumption in such a case is that the voter knew the blank space was intended only for the insertion of names not printed on the ballot, and that the person whose name he wrote in the blank space was not the same person whose name, printed in the left hand column, he marked with a cross.

Under the ballot law of June 10, 1893, it is not enough that the intention of the voter may possibly be ascertained, or his irregularity or equivocal acts explained by evidence dehors his ballot. The purpose of the legislature in presenting the form of ballot and specifically directing how it should be prepared and used by the voter, was to avoid all such inquiries and the consequences likely to result therefrom. It was intended that the ballot, when prepared by the voter and delivered to the proper election officer, should be per se self explanatory.

Argued Nov. 1, 1895.   Appeal, No. 180, Oct. T., 1895, by Frank T. Redman, from order of Q. S. Allegheny Co., March T., 1895, No. 2, directing new election for justice of the peace in the borough of Braddock.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Petition for election contest.

The facts appear by the opinion of the Supreme Court.

The material portions of the disputed ballot, a copy of which was attached to the petition, was in form as follows :

A CROSS (X) MARKED IN THE SQUARE AT THE RIGHT OF THE NAME OF EACH CANDIDATE, INSIDE THE LINE ENCLOSING THE COLUMN, INDICATES A VOTE FOR EACH CANDIDATE THUS MARKED.

IF A CROSS (X) BE MARKED WITHIN THE CIRCLE IT WILL BE EQUIVALENT TO A MARK OPPOSITE EVERY NAME IN THE COLUMN. THOSE WHO DO NOT DESIRE TO VOTE A STRAIGHT TICKET MUST NOT MARK A CROSS WITHIN THE CIRCLE AT THE HEAD OF THE COLUMN.

Errors assigned among others were (2) decree adjudging Frank T. Redman not duly elected; (3) in ordering a new election.

*William Yost*, for appellant.—To the petition is attached a form showing only a part of the ballot cast, but that part we contend shows that the ballot was illegal, and court should, upon the face of the petition alone, have dismissed it without further inquiry: Act of June 10, 1893, P. L. 419.

When the voter deliberately wrote the name John S. Lowry immediately underneath the direction, it is a fair presumption that he intended to vote for a candidate whose name was not printed on the ballot. And if he did so, the name inserted brings that portion of his ballot in conflict with the name of the candidate printed on the ballot, which he also marked: McCowin's App., 165 Pa. 233; Curran v. Clayton, 86 Me. 42; Parmley v. Healy, 64 N. W. Rep. 186; Pennington v. Hare, 62 N. W. Rep. 116; Ellis v. Glaser, 61 N. W. 648.

It is not enough under the new ballot law, that the intention of the voter is ascertainable.

The court had no power to order a special election: Act of March 22, 1877, P. L. 12.

*E. J. Smail, C. S. Fetterman* with him, for appellee.—If the name John S. Lowry was not printed on the ballot, writing the name " John S. Lowry " in the column of blank spaces at the proper place would not only be a legal ballot, but it would be the only way to cast a legal ballot for him: McCowin's App., 165 Pa. 233.

There is but one " John S. Lowry " in the borough of Braddock; he is the only Lowry a candidate for this or any other office; his name is correctly printed on the ballot and correctly marked; his name correctly spelled is written on the ballot. Under this state of facts, the written name, while a nullity, can have no other effect than perhaps to emphasize the voter's intention to vote for said John S. Lowry.

This case is in no wise conflicting with McCowin's App, 165 Pa. 233.

Neither does the doctrine " expressio unius, est exclusio alterius " affect this case. This ballot was marked exactly as prescribed where one is voting for a candidate whose name is printed on the ticket. That the voter tried to make a sure thing doubly sure, cannot vitiate his ballot.

If this ballot be decided to be a legal ballot, then the common

pleas cases, to the effect that the election laws are intended to protect the voter in the exercise of the franchise, and not to restrict or embarrass him, and that where the requirements of the act have been substantially complied with and the voter's intention is manifest from the ballot itself, will be given some force : Election of Common Council, 3 Dist. Rep. 120 ; Weidknecht v. Hawk, 3 Dist. Rep. 123 ; Louck's Case, 3 Dist. Rep. 127 ; Meddendorf's Case, 4 Dist. Rep. 78.

OPINION BY MR. JUSTICE STERRETT, January 6, 1896 :

As shown by official returns of last municipal election in Braddock borough the appellant was elected justice of the peace by a majority of one vote. The petitioners alleged and succeeded in satisfying the court below that a certain rejected ballot should have been counted by the election officers. The result was a tie between appellant and his leading competitor John S. Lowry; and a new election was accordingly ordered. The controlling question is, whether the ballot referred to was illegal and rightly rejected by the election officers.

There was only one justice of the peace to be chosen at said election, and of course no elector had a right to vote for more than one person for that office. In the petition to the court below, the contested ballot is described thus : " Under the title, ' Justice of the Peace ' ('mark one '), in the left hand column of said ballot, in the square at the right of the name ' John S. Lowry ' printed on said ballot and inside the lines inclosing the column, is marked a cross ($\times$) and immediately following the cross ($\times$) but in the right hand column on said ballot, being a column of vacant spaces, and under the title, ' Justice of the Peace ' ('insert one '), inside the lines inclosing the column, is written the name ' John S. Lowry.' At the head of said column of vacant spaces are printed the words : ' The voter may insert in the column below *the name of any person, whose name is not printed on the ballot*, for whom he desires to vote."

It is averred in the petition that the " Election officers received said ballot but refused to count ' the same ' for the said John S. Lowry . . . . and said ballot so rejected was returned to the ballot box where the same now remains." It is also averred " that said ' John S. Lowry ' is the only person of that name resident in the borough of Braddock and is the identical

person whose name is printed in the left hand column of said ballot, and whose name is written in the right hand column of said ballot and is the person for whom said ballot was intended and was legally cast for the office of justice of the peace of the borough of Braddock." It is further averred that said contested ballot was "cast by a qualified elector of" said borough "whose name is unknown to your petitioners."

In his answer, the respondent, among other things, represents "that, if all the averments of fact contained in the petition were true, nevertheless the petition is insufficient in law, because under the averments of said petition the ballot therein mentioned and referred to is illegal and not cast according to law, and was properly rejected." He further denies, on information and belief, all the material allegations of the petitioners, as to the description of the ballot rejected, the intention of the voter and the identity of the two persons voted for upon said ballot.

We have recently had occasion in McCowin's Appeal, 165 Pa. 233, to notice some of the provisions of the new ballot law of June 10, 1893. After referring, inter alia, to the 14th section relating to the blank space column of the ballot, and the 22d section, prescribing the way in which the voter shall prepare his ballot, etc., and commenting thereon, we said: "Everything necessary or proper to be done by the voter, in order to record the free and unconstrained expression of his choice of persons to fill the respective offices, is thus provided for; and the manner in which said right of choice shall be exercised is specifically pointed out. If he desires to vote for any of those whose names are printed on the official ballot, he must do so by 'marking' as directed by the act. If he wishes to vote for persons whose names are not already on the ballot, he can do so by 'inserting' their names in the blank spaces prepared therefor; but he has no right to insert anything else in said blank spaces or in any part of the right hand column.

In so far as the mode of voting is thus specifically prescribed by the act, all other modes are, by necessary implication, forbidden. Expressio unius est exclusio alterius."

The original ballot in question was not produced in the court below, but, assuming the copy attached to the petition to be correct, it shows on its face that the "unknown" voter, whoever he may have been, disregarded the plain requirement of

the law in preparing his ballot, in that he voted or undertook
to vote, by "marking," for a person whose name was printed
on the ballot, and also voted or undertook to vote by "insert-
ing" an additional name in the blank space provided exclu-
sively for names not already on the ballot.   The presumption
is that he knew the blank space was intended only for the
insertion of names not printed on the ballot, and that the per-
son whose name he wrote in the blank space was not the same
person whose name, printed in the left hand column, he marked
with a cross (✕).   If the voter's first act, in preparing his bal-
lot, was the "insertion" of the name found in the blank space,
he had no right, whatever, to afterwards attempt to vote by
"marking" for either of the candidates for justice of the peace
whose names are printed in the left hand column.   On the
other hand, if his first act in preparing his ballot was marking
with a cross (✕) as appears in the left hand column, he had
no right to afterwards "insert" the name "John S. Lowry"
in the blank space.   It was thus manifestly impossible for the
election officers, or any one other than the voter himself, to
determine which of the acts,—that of "marking" in the left
hand column or that of "writing" the name "John S. Lowry"
in the blank space,—was first in order of time, or whether the
voter intended by both acts to vote for two persons or for only
one and the same person, or, in brief, what may have been his
purpose in doing what he is admitted to have done in prepar-
ing his ballot.   When the election officers came to count the
votes, it must have been quite evident to them, on inspection
of the ballot in question, that the specific mode of voting pre-
scribed by the act had been disregarded by the voter, and hence
they were clearly right in refusing to count the vote for any
one.   It was plainly a vitiated, illegal ballot made so by the
act of the voter himself.   If such an utter departure from the
positive requirements of the act were sanctioned or encouraged,
either by election boards or courts, it would lead to the most
serious consequences.   Under the new ballot law, it is not
enough that the intention of the voter may possibly be ascer-
tained, or his irregular and equivocal acts explained by evi-
dence dehors his ballot.   The purpose of the legislature, in
prescribing the form of ballot and specifically directing how it
should be prepared and used by the voter, was to avoid all such

inquiries and the consequences likely to result therefrom. It was intended that the ballot, when prepared by the voter and delivered to the proper election officer, should be per se self-explanatory. There is no good reason why it should not be so.

These views might be further enforced by other suggestions, but further elaboration of the subject is unnecessary. Enough has been said to show that the ballot in question is irregular and illegal and should have been so held by the court below. This conclusion renders the consideration of other questions unnecessary.

The decree of the Court of Quarter Sessions is reversed and set aside; and it is ordered that the petition be dismissed, and that the costs in the court below and here be paid by the petitioners.

MITCHELL, J., dissented.