## Neshaminy School District Election Contest

*Robert W. Valimont*, for petitioners.

*John W. Dean, 3rd*, for respondents.

SATTERTHWAITE, P. J., Specially Presiding, April 5, 1968.—This is an election contest of class V (section 1711 of the Election Code of June 3, 1937, P. L. 1333, 25 PS §3291), challenging the return by the board of elections that C. William VanTilburg had been elected school director for Neshaminy School District, region no. 3, at the municipal election held on November 7, 1967. The problem at issue is the significance and effect to be attributed to erroneously printed absentee ballots provided for voters regis-

tered as electors in three of the nine election districts comprising such region no. 3 of the school district.

The proceedings were regularly instituted and carried on under section 1751, et seq., of the Election Code, 25 PS §3431, et seq. The matter came on for hearing in due course before Judge Monroe. Briefs of argument were subsequently furnished, but, in view of the public importance and interest in the questions involved, Judge Monroe informally communicated to counsel his desire that the proceedings be duly considered by other members of the court as well as himself. Accordingly, in order to avoid delay and in recognition of the circumstance that President Judge Biester and Judges Beckert and Power had disqualified themselves, counsel filed a stipulation in writing agreeing that the matter might be considered and decided by a court en banc comprised of such others of the judges of this court, including President Judge Satterthwaite, of the Orphans' Court, specially presiding, as might be assigned for the purpose, on the stenographic record of the hearing before Judge Monroe and the briefs filed, without necessity for further hearing or argument before such other judges. Accordingly, the matter has been duly considered and is now decided on such record and argument briefs by a majority of a court en banc consisting of Judge Monroe (the hearing judge), President Judge Satterthwaite, and Judges Bodley and Garb.

The facts involved are relatively simple and not in dispute. As mandated by section 1773 of the Election Code, 25 PS §3473, such facts are separately and formally stated, as follows:

### FINDINGS OF FACT

1. At the municipal election held on November 7, 1967, one of the offices to be balloted for was that of school director, four-year term, to represent region no. 3 of the Neshaminy School District, in this county,

said region no. 3 being composed of nine voting districts or precincts, to wit, Middletown Township Upper Election District No. 1, Middletown Township Lower Election Districts Nos. 1, 2, 7 and 11, Langhorne Borough Election District, Langhorne Manor Borough Election District, Penndel Borough Election District and Hulmeville Borough Election District.

2. At said election, the duly nominated candidates for the office of school director, four-year term, in said region no. 3 were C. William VanTilburg, Republican Party, and Larry A. Brossman, Democratic Party.

3. Except only as stated in findings nos. 4 and 5, infra, the names of VanTilburg and Brossman, as such candidates, properly and accurately were printed on all voting machine labels and on all absentee ballots in all nine voting precincts constituting said region no. 3.

4. The erroneous printing and preparation of ballots by the board of elections, constituting the occasion for and subject matter of the within proceedings, related only to the absentee ballots prepared for and distributed to absentee voters of only three of the nine election precincts constituting said region no. 3, to wit, Middletown Township Upper Election District No. 1, Middletown Township Lower Election District No. 7, and Middletown Township Lower Election District No. 11.

5. In preparing the absentee ballots for the three election precincts mentioned in finding no. 4, supra, the names of K. Ward Vinson, Republican Party, and Adolf Futterweit, Democratic Party, were erroneously printed as the candidates for school director, four-year term, instead of VanTilburg and Brossman, respectively, and said errors were not detected by, or brought to the attention of, the board of elections until after the date of said election on November 7, 1967.

6. Vinson and Futterweit, in fact, were the respective nominees for election as school director, four-year term, in region no. 2 of Neshaminy School District; neither was a resident of region no. 3, nor was either a candidate or eligible to be a candidate for school director in region no. 3.

7. The unquestioned and unchallenged tally of the votes cast at said election for school director, four-year term, region no. 3 of Neshaminy School District, except for the absentee ballots for the three voting precincts mentioned in finding no. 4, supra, including those cast on the voting machines in all nine precincts and those by absentee ballots for the other six precincts, was as follows: for VanTilburg 2,170; for Brossman 2,152; resulting in a majority of 18 for VanTilburg.

8. Twenty-six of the erroneously printed absentee ballots were duly returned to the board of elections for tally from electors of the three voting precincts specified in finding no. 4, supra. They were marked, so far as presently pertinent, as follows:

(a) Fourteen thereof, by an X in the square after the Democratic Party name in the party column, with no separate or other marking of choice of any individual candidate for any office on the ballot, whether school director or otherwise, except that some thereof did register separate votes on a constitutional amendment question.

(b) One thereof, by an X indicating a similar straight Republican vote, with no individual candidates marked.

(c) Three thereof, by an X in the Democratic Party column, and also by X's after the name of each and every Democratic Party candidate as printed on the ballot, including the name of Futterweit for school director.

(d) Eight thereof, by X's after the names of various individual candidates as printed on the ballot, including seven after the name of Futterweit and one after the name of Vinson, respectively, for school director, but with no marking in either Republican or Democratic party column; two ballots in this category were marked by X's after the name of each and every Democratic Party candidate as printed thereon.

(e) On none of the 26 ballots in question was the name of either VanTilburg or Brossman, or of any other candidate, written in by any elector.

9. The board of elections tallied the absentee ballots mentioned in finding no. 8, supra, as two votes for Vinson and 24 votes for Futterweit, leaving unchanged the tabulation for VanTilburg and Brossman as stated in finding no. 7, supra, and resulting in the certification of VanTilburg as the duly elected school director, four-year term, in Neshaminy School District, region no. 3.

10. The absentee ballots for the three election precincts in question were so defectively printed, by reason of the misstatement of the names of the candidates respectively nominated for school director, four-year term, for election in said region no. 3, as to be calculated to mislead the absentee voters of said election precincts in regard to the candidates actually nominated for said office.

11. Such defective condition of the absentee ballots in the three voting precincts in question may have affected the result of the entire election for school director, four-year term, for Neshaminy School District, region no. 3, as conducted in all nine election precincts constituting such region no. 3, notwithstanding that such defective condition did not obtain with respect to the absentee ballots in the six other election precincts thereof or with respect to the voting machine labels in any of the election precincts thereof.

DISCUSSION

Petitioners-contestants assert alternative grounds for their attack upon VanTilburg's certification as the elected school director, four-year term, Neshaminy School District, region no. 3, contending either (1) that the 24 votes ostensibly cast for Futterweit on the erroneously printed absentee ballots of electors in the three subject voting precincts should be counted for Brossman, thus overcoming VanTilburg's certified majority of 18, plus, applying the same argument on the other side, the two votes cast on such absentee ballots for Vinson, and, hence, resulting in Brossman's election; or, if this contention be unavailing, (2) that the school director election should be set aside and a vacancy in said office should be declared under section 1772 of the Election Code, 25 PS §3472. All of the judges comprising the court en banc believe that the first position is lacking in merit, but a majority of the participating judges concur in the conclusion that the second must be sustained.

On the first of these arguments, it may well be contended with some persuasiveness that the 14 straight Democratic ballots with no individual candidates separately voted for, as well as the one straight Republican ballot in the same category, should be regarded as votes for Brossman and VanTilburg, respectively, since a vote in the party column only, with no vote for individual candidates, constitutes a vote "for every candidate of a party or political body so marked" (sections 1215(c) and 1223(b) of the Election Code, as amended, 25 PS §3055, 3063), and Brossman and VanTilburg, in fact, were such candidates even though not so named on the ballots in question. We need not decide this proposition, however, nor the further question of whether the same rationale would apply to the additional three ballots where, in addition to marking the Democratic Party

column, the voters also marked the name of each and every individual Democratic candidate printed on the ballot. Even if Brossman be entitled to 17 additional votes on this basis, he still would not overcome Van-Tilburg's certified majority of 18 plus the one more which the latter would pick up on the same argument, unless Brossman also be given at least three of the seven "split-ticket" or individual votes marked for Futterweit with no party-column vote indicated.

We fail to understand how Brossman may legally claim any of these seven "split-ticket" or individually marked ballots in any view of the case. In these instances, and notwithstanding that under contestants' own evidence, much publicity had been given to Brossman's candidacy for school director in region no. 3, seven electors took the trouble, not to vote a straight party ticket in the manner directed by the Election Code and printed on the ballot, but rather to select and choose among the individual candidates, by name. In effectuating this discriminating process, they deliberately voted for Futterweit, rather than writing in Brossman's name. While various possibilities may be conjectured as to what motivated them to mark their ballots in this fashion, speculation and guesswork may not legally provide the basis for resolving problems arising out of a questionable manner of exercising the voting privilege. Compare Democratic County Committee Appeal, 415 Pa. 327, 339 (1964).

Section 1215 (c) of the Election Code, as amended, 25 PS §3055, provides, in relevant part:

"(c) At elections, the elector shall prepare his ballot in the following manner: He may vote for the candidates of his choice for each office to be filled according to the number of persons to be voted for by him for each office, by making a cross (X) or check (√) mark in the square opposite the name of the candidate, or he may insert by writing, stamping or sticker, in

the blank spaces provided therefor, *any name not already printed on the ballot*, and such insertion shall count as a vote without the making of a cross (X) or check (√) mark. . . ." (Italics supplied.)

This provision, subject to the additional provisions of the same section relative to voting a straight party ticket and the presently immaterial exceptions from such straight party ballot, must be regarded as the exclusive manner of voting for a particular nominee, whether or not he be named on the ballot as printed. As noted in Little Beaver Township School Directors' Election, 165 Pa. 233, 237 (1895) :

"In so far as the mode of voting is thus specifically prescribed by the act, all other modes are, by necessary implication, forbidden. Expressio unius, est exclusio alterius. The ordinary rule, as has been stated by recognized authority, is that where power has been given to do a thing in a particular way, then affirmative words, marking out the way, by necessary implication prohibit all other ways".

See also In re Contested Election of Frank T. Redman, 173 Pa. 59, 63 (1896) ; Rodgers' Contested Election, 234 Pa. 512 (1912) ; and compare Democratic County Committee Appeal, supra, 415 Pa. at 334.

Accordingly, since Brossman's name was neither printed nor written in on the seven ballots in question, and no party column vote was marked, no legal vote for him could have been accomplished under these exclusive statutory directions. Nor is the situation altered by the circumstance that contestants proposed to show that certain of the electors who claimed to have cast some of the absentee ballots in question really intended to vote for Brossman. This offer was in the form of ex parte affidavits purportedly executed by 23 persons whose names appeared on exhibit P-6, the list of electors voting absentee ballots who were

registered in the three election precincts in question.

Objection to these affidavits, a ruling on which was reserved by the hearing judge, is hereby sustained, and said documents are hereby disregarded. Apart from their inherently ex parte and hearsay nature with no opportunity to cross examine the affiant (and the fact that they are apparently statements under oath does not obviate this objection: Pore v. Pore, 189 Pa. Superior Ct. 615, 620 (1959)), such evidence should not be admissible in an election contest as a matter of policy in any event.

Judge Woodside, in In re Thomas A. Crowley— Election Contest, 57 Dauph. 120 (1945), after an exhaustive citation and discussion of the precedents, concluded on this subject, at page 127:

"We are not prepared to state nor called upon to say that there are no circumstances under which a legal voter will be permitted to take the witness stand of his own volition and testify how he voted. There may be circumstances where it is proper, as for example if the ballots were lost or destroyed. But we are satisfied that, where it is possible to determine from the ballots what the vote of the district was, and there is no proof of fraud, we have no authority to accept the oral testimony of the voter as to his vote, rather than to accept the ballots as they are found in the ballot box.

"If instead of returning the votes as shown on the ballots we should make return of votes according to the oral testimony of the voters we would be making a mockery of secrecy of the ballot, and at the same time we would be violating one of the most firmly established principles of our law, to wit: that it is not the intent of the voter that governs, but only such intent as is expressed in the manner prescribed by statute. *Counting of Votes, Middle Paxton Township*, 43 Dauphin 180, 183 (and cases there cited) affirmed in 325 Pa. 48".

Compare In re Appeal of Bert Transue from Returns of County Board of Electors, 35 Northamp. 329, 333 (1959), wherein the court noted that such testimony not only would violate the spirit of secrecy of the ballot, but would also actively invite bribery and fraud. The very purpose of the mandates of the Election Code as to the form of ballots and manner of their use is to avoid such extraneous inquiries and the adverse consequences likely to result therefrom, so that the cast ballot "should be per se self-explanatory": Redman's Election, supra, 173 Pa. at 64-5. The intent of the voter must appear from what he did and not by his evidence of what he intended to do: Contested Election of Corry School Director, 18 Dist. R. 4, 5, 35 Pa. C. C. 152, 153 (1908).

Turning to contestants' second argument, a majority of the court regretfully comes to the conclusion that the case is within section 1772 of the Election Code, 25 PS §3472, and that, therefore, no alternative is presented but to declare the within-contested election for school director to be invalid so that a vacancy in office results, to be filled by appointment as in the case of other vacancies. We reach this determination with regret because it means that, in effect, over 4,300 voters will have been thwarted in their right of franchise as to this office solely because of the erroneous printing of the 26 absentee ballots in the three voting precincts in question. But we see no choice in the matter in view of the closeness of the election and the mandatory requirements of section 1772. The latter provides, in relevant part, as follows:

"Whenever in any contested . . . election, the tribunal trying the case shall decide that the ballots . . . used in one or more election districts, by reason of the . . . misstatement of one or more . . . names of candidates . . . were so defective as to the office in contest as to be calculated to mislead the voters in

regard to any of the candidates nominated . . . for said office, and that the defective condition of the said ballots . . . may have affected the result of the entire . . . election for said office, the said tribunal shall declare the . . . election to be invalid as regards the said office, and in the case of elections shall report their decision, in cases where vacancies in such offices are filled by appointment, to the proper officer or officers who are by law authorized to fill vacancies occurring in such office, who, upon receipt of such notice, shall, without delay, proceed to appoint a suitable person or persons to fill the vacancies thus created, and the person or persons so appointed shall continue in office until the next election succeeding his appointment at which such office is by law required to be filled . . ."

It seems clear to a majority of us that the various ramifications of the erroneous preparation of the absentee ballots in the present case demonstrate that they were so defective as to be calculated to mislead the crucially significant number of those using them, under the precedents construing and applying this statutory language or that of its practically identical predecessors, the Act of June 10, 1893, P. L. 419, sec. 29, as amended by the Act of April 14, 1897, P. L. 23, now repealed. Erroneous, confusing or ambiguous printing of the names of candidates on the ballot provided the occasion for invoking such statutory provisions and setting aside elections in Foy's Election, 228 Pa. 14 (1910); Contested Election of Corry School Director, 18 Dist. R. 4, 35 Pa. C. C. 152 (1908); Snodgrass's Contested Election, 29 Dist. R. 562, 49 Pa. C. C. 39 (1920), affirmed, 267 Pa. 494 (1920); In re Election of Straban Township School Directors, 30 D. & C. 651 (1937); Harmony School District v. Butler Commissioners, 3 Butler 42 (1963).

Similarly, where the format of the ballot was prepared in a misleading or uncertain fashion, as by failure to separate and particularize, or otherwise provide for, the respective candidates nominated or to be named where there had been no nominations for different classes or terms of the same office when more than one class was to be elected, such deficiency was found to require the admittedly drastic and reluctantly applied remedy provided by this legislative direction in Elizabethville Borough Election, 5 Dist. R. 227 (1896); Upper Mahanoy Township Election, 16 Dist. R. 568 (1907); Gallagher's Contested Election, 23 Dist. R. 864 (1912); Danville Election Contest, 29 Dist. R. 946, 48 Pa. C. C. 445 (1920).

Lanzi's Election, 94 Pitts. L. J. 286, 4 Lawrence 270 (1945), is a case almost precisely on point factually with the instant case. It involved the election of a borough councilman from the second ward of Ellwood City. That ward was divided into two voting precincts, the first being in Lawrence County and the second in Beaver County. The ballots used in the former were correctly printed with the names of the duly nominated candidates for the councilmanic office; those in the latter, however, like the absentee ballots for the three subject precincts in the present case, were printed with the names of the respective candidates for councilman from another ward of the same borough, who neither were, nor were eligible to be, candidates in the second ward. Lanzi, the duly nominated Democratic candidate, carried the first precinct by a vote of 185 to 148 for his opponent, but was returned by the election officials as having lost the second precinct, and, hence, the election, by reason of only seven votes written in for him therein as against 97 recorded for his duly nominated opponent, who, discovering the mistake early on Election Day, had had stickers printed and circulated, a stratagem

which Lanzi did not adopt. A total of 195 ballots were cast in the second precinct; however, the opinion does not disclose, and made no point whatsoever of, the straight party vote or the individual ballots marked for the candidates whose erroneously printed names appeared thereon.

Judge Braham, for the Lawrence County court, held that section 1772 of the Election Code was applicable, the ballots for the second precinct being so defectively prepared by reason of the omission of the names of the duly nominated candidates and the erroneous substitution of other names therefor "as to be calculated to mislead the voters" with respect to this office, and such defective condition quite apparently being such as "may have affected the result" of the entire election.

The same conclusions are compelled in the instant proceedings. It is clear that the subject absentee ballots presented at least a substantial possibility of misunderstanding, if not of outright deception, as to the identity of the duly nominated candidates in region no. 3 for the four-year term as school director in the Neshaminy School District. Moreover, this possibility was rendered even more likely under the particular circumstances here disclosed because the names of the candidates for school director, four-year term, as actually printed on the subject absentee ballots, although erroneous for this region, in fact were really in nomination for that same office, for that same term and for the same Neshaminy School District, although for another region. It is equally clear, from the closeness of the result of the undisputed votes cast, that the susceptibility to mistake presented by the 26 erroneously printed ballots in question may have affected the outcome of the entire election in contest. Because of this circumstance, a majority of the court believes that it is entirely beside the point and of no legal sig-

nificance that the error occurred in connection with only a very small fraction of the ballots in comparison with the total number of ballots and ballot labels involved in the nine voting precincts comprising region no. 3 of the school district.

## FINAL ORDER

And now, April 5, 1968, for the reasons stated in the foregoing opinion, it is hereby finally ordered, decreed and declared that the election held on November 7, 1967, for the office of school director, four-year term, for Neshaminy School District, region no. 3, was invalid and of no effect as regards said office, and that notice of this decision, consisting of a copy of this final order and accompanying opinions, which decision hereby declares a vacancy in the office of school director as of this date, shall be forthwith reported to the school directors of Neshaminy School District, who, upon receipt of such notice, without delay, shall proceed to appoint a suitable person to fill the vacancy thus created, as provided by law.

The costs of the within proceeding shall be paid by the County of Bucks.

President Judge Biester and Judges Beckert and Power did not participate in the consideration or decision of this case.

## DISSENTING OPINION

MONROE, J., April 5, 1968.—I agree with the findings of fact made by the majority including findings nos. 10 and 11. However, I would add the following findings:

To the majority finding no. 7 "For the office of School Director, four-year term, from Neshaminy School District Region No. 3, at the Municipal Election of November 7, 1967, the votes by machine in the three election districts wherein defective absentee ballots were printed and used were, for C. William

VanTilburg and Larry A. Brossman as follows: Middletown Township, Lower No. 7, VanTilburg, 245, Brossman, 348; Middletown Township, Lower No. 11 VanTilburg, 139, Brossman, 226; Middletown Township, Upper No. 1, VanTilburg, 324, Brossman, 271".

To the majority finding of fact no. 8(a) : "Of the ballots so marked five were cast in Lower Election District No. 7 and nine in Upper Election District No. 1".

To the majority finding of fact no. 8(b) : "This ballot was cast in Lower Election District No. 7".

To the majority finding of fact no. 8(c) : "Two of the ballots so marked were cast in Lower Election District No. 7 and one ballot so marked was cast in Upper Election District No. 1".

And to the majority finding of fact no. 8(d) I would add: "Of the ballots so marked, three were cast in Upper Election District No. 1, three in Lower Election District No. 7, and two in Lower Election District No. 11".

I am in accord with the majority that the ex parte affidavits offered in evidence by petitioners have no evidentiary place in this contest and, consequently, that the objection thereto must be sustained.

I regret that I have a fundamental disagreement with the majority which rests upon my conviction that section 1772 of the Election Code has no application to this situation before us. For the reasons hereinafter stated, I would refuse to apply it. I would, consequently, enter an appropriate order declaring C. William VanTilburg to have been elected to the contested office.

In arriving at my conclusion, I have given specific application, in this contest, to general principles of law applied by the courts in election contests. I refer to the following:

120

The power to throw out the entire poll of an election district for irregularities must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons: Bauman Election Contest Case, 351 Pa. 451, 454 (1945); Norwood Election Contest Case, 382 Pa. 547, 552 (1955); Perles v. Northumberland County Return Board, 415 Pa. 154, 159 (1964); Absentee Ballots Case, 423 Pa. 504, 515 (1966). Every rationalization within the realm of common sense should aim at saving the ballot rather than voiding it: Norwood Election Contest Case, supra, page 552; Perles v. Northumberland County Return Board, supra, page 159. In the absence of a showing that any voter acted illegally or that his vote was not cast according to his will, we cannot allow carelessness or even fraud of the election officers to defeat the election and frustrate the will of the electorate. This can be done only when the illegal acts are so irregular and the election so infected with fraud that the result cannot be ascertained: Wilkes-Barre Election Contest, 400 Pa. 507, 512 (1960).

"To obtain freedom of choice, a fair election and an honest election return were the purposes and objectives of the Election Code; these purposes and objectives are in accord with sound public policy. This Court has held, we repeat, that 'the Election Code must be *liberally* construed so as not to deprive an individual of his right to run for office, or the voters of their right to elect a candidate of their choice.' Ross Nomination Petition, 411 Pa. 45, 48, 190 A. 2d 719, 720 (1963). See also to the same effect, Altoona Mayor Substitute Nomination Case, 413 Pa., supra; County Commissioner Substitute Nomination Case, 383 Pa. 372, 118 A. 2d 750 (1955)": Perles v. Hoffman, 419 Pa. 400, at page 405 (1965).

With the foregoing in mind, I have considered the provisions of the Election Code and the evidence before us.

The provisions of the Election Code pertaining to voting by absentee electors (art. XIII, sec. 1303(b), 25 PS §3146.3) require that, in districts in which voting machines are used, the official absentee ballots shall be in substantially the form for ballots required by article X of the code. Article X, sec. 1003 of the code, 25 PS §2963, prescribes the form of official ballot. It requires the following, inter alia, to be printed upon the official ballot:

". . . A cross (X) or check (√) mark in the square opposite the name of any candidate indicates a vote for that candidate".

"To vote a straight party ticket, mark a cross (X) or check (√) in the square, in the Party Column, opposite the name of the party of your choice. . . . For an office where more than one candidate is to be voted for, the voter, after marking in the party square, may divide his vote by marking a cross (X) or check (√) to the right of each candidate for whom he or she desires to vote. For such office votes shall not be counted for candidates not individually marked".

"To vote for a person whose name is not on the ballot, write, print or paste his name in the blank space provided for that purpose . . . ".

It states:

"(b) . . . The names of candidates shall be arranged under the title of the office for which they are candidates, and shall be printed thereunder . . . "

"(f) In order that each elector may have the opportunity of designating his choice for all the candidates nominated by one political party or political body, there shall be printed on the extreme left of the ballot, and separated from the rest of the ballot by a space of at least one-half inch, a list of the names of

all the political parties or political bodies represented on such ballot which have nominated candidates to be voted for at such election. . . . A square of sufficient size for the convenient insertion of a cross mark shall be placed at the right of each party name or appellation".

How the absentee elector is to mark his ballot to express his choice of candidates and the manner of counting absentee ballots with respect to the marking thereof is not specifically spelled out by the provisions of the Election Code relating to absentee voting. It may be assumed, however, that the provisions of the Election Code respecting ballots used at polling places apply. Further, in referring to absentee ballots, section 1308(d), 25 PS §3146.8, provides: " . . . The board shall . . . record the votes in the same manner as district election officers are required to record votes . . ."

The defective absentee ballots cast in the three election districts should be construed, if at all possible, so as to enfranchise rather than disfranchise the absentee electors: Norwood Election Contest Case, supra; Bauman Election Contest Case, supra. The effect of a ballot should always be determined in such a manner as to effectuate the intent of the voter: McCracken Appeal, 370 Pa. 562 (1952); In re Appeal of Bert Transue from Returns of County Board of Electors, 35 Northamp. 329, 332.

The situations wherein the elector desires to vote a straight party ticket and where the elector desires to vote the straight party ticket but to split it as to one or more offices is covered by the Election Code, section 1251(c), 25 PS §3055, wherein it provides:

" . . . If he [the elector] desires to vote for every candidate of a political party or political body, except its candidates for offices as to which he votes for individual candidates in the manner hereinafter pro-

vided, he may make a cross (X) or check (√) mark in the square opposite the name of the party or political body of his choice in the party column on the left of the ballot, and every such cross (X) or check (√) mark shall be equivalent to and be counted as a vote for every candidate of a party or political body so marked, . . . except for those offices as to which he has indicated a choice for individual candidates of the same or another party or political body, by making a cross (X) or check (√) mark opposite their names in the manner hereinabove provided, as to which office his ballot shall be counted only for the candidates which he has thus individually marked, notwithstanding the fact that he made a mark in the party column, and even though in the case of an office for which more than one candidate is to be voted for, he has not individually marked for such office the full number of candidates for which he is entitled to vote . . ."

Of the official absentee ballots before us, it appears that 15 were voted "straight", 14 Democratic and 1 Republican, by placing the required cross mark in the square opposite the party name, without any other marking of the ballot. Six of such ballots were from Middletown Township Lower Election District No. 7, nine from Middletown Township Upper Election District No. 1. No ballots were so marked from Middletown Township Lower Election District No. 11. With respect to those ballots, it is to be noted that the legislative direction is that a ballot marked only with a cross (X) or check (√) mark opposite the name of the party is to be counted for every candidate of the party so marked. The direction is that the vote is to be counted for all of the candidates of the party; it does not limit the vote to those candidates whose names appear upon the ballot. This direction of the code is carried into the instructions on the official absentee ballots under consideration:

"To vote a straight party ticket, mark a cross (X) or check (√) in the square, in the Party Column opposite the name of the party of your choice".

Having regard for the instruction on the ballots and the directions of the code, that the ballots so cast must be counted for *every candidate* of the party for which they were respectively marked, it may not be assumed that the absentee electors casting those ballots did not know the identity of the party's nominee for school director for a four-year term, in their voting district, or that they did not desire to vote the full party ticket no matter who its nominees may have been. It is not to be assumed that those voters did not know the provisions of the Election Code or were lacking in sufficient intelligence to understand the directions contained upon the ballot. It is, therefore, my considered judgment that those ballots must be counted as votes for the candidate, for the office of school director, four-year term, of the party for whom the respective ballots were so marked. This is particularly so when I take into consideration the fact that the votes so cast were not split in any way by votes marked for individual candidates of any party for other offices shown on the ballot and the fact that 12 of the 15 ballots showed votes on the constitutional amendment question contained upon the ballot, thus demonstrating comprehension and understanding by the elector in casting his ballot. Accordingly, of the ballots so cast, it is my opinion that 14 must be counted for the Democratic candidate, Larry A. Brossman, and one for the Republican candidate, C. William VanTilburg.

With respect to the three ballots found to have been marked by a cross after the Democratic party name in the party column, and also by X's after the name of each and every Democratic party candidate as printed on the ballot, including the name of Adolf Futterweit, these cannot be counted for Adolf Futterweit since he

was not eligible to hold office from the voting districts in which they were cast. They cannot be credited to, or counted for, Larry A. Brossman or C. William VanTilburg by virtue of the X after the name of Adolf Futterweit in the office block, because their names were not printed upon the ballots or added thereto by the voting electors in the manner required by the act. They cannot be credited to, or counted for, Larry A. Brossman by virtue of the X after the Democratic party name in the party column, because the above legislation indicates that when a party name is voted and an individual name is also voted, the latter shall be interpreted as a repudiation of the party candidate for that office and, because, from a consideration of the three ballots and the competent evidence before us, it is impossible to determine whom the three electors who marked their absentee ballots after the Democratic party name in the party column as well as in the squares after the name of Adolf Futterweit may have, in their minds, chosen for the office of school director, four-year term. Compare Redman's Election; Redman's Appeal, 173 Pa. 59 (1896). It would be idle to speculate as to what the electors casting those ballots intended to do. " . . . if, for any reason, it may be impossible to determine his [the elector's] choice for any office, his ballot shall not be counted for such office . . . ": Code, sec. 1223(a), 25 PS §3063.

I concur with the majority's refusal to credit Larry A. Brossman with any of the seven ballots marked by X's after the names of the various individual candidates, including such markings after the name of Adolf Futterweit and with the majority's reasons for refusing. For the same reasons, I would not credit any of the eight ballots referred to in the majority finding of fact no. 8(d) to either Brossman or VanTilburg.

It remains for me to explain why I find myself unable to agree that section 1772 of the Election Code,

25 PS §3472, requires us to declare the election to be invalid as regards the office of school director, four-year term, in region no. 3 of Neshaminy School District. I am not unmindful of the statement in Foy's Election, 228 Pa. 14, 19 (1910):

"A court ought always to be slow to set aside an election for any office, but when the legislature has ordained that under a certain state of facts it shall so act, and such facts plainly appear upon the record, the duty is clear, and there should be no hesitation about declaring the election invalid. . ."

I do not believe that the state of facts before us are within the ordinance of section 1772 of the Election Code. It is my opinion that the wording of that section does not justify a construction which would invalidate the entire election for the office of school director, four-year term, in the Neshaminy School District region no. 3, or invalidate the election in any of the election districts in which the defective absentee ballots were used. If this section of the code required a liberal construction in order to preserve the franchise of the overwhelming number of electors in Neshaminy School District region no. 3 who voted valid ballots and ballot labels, I would give this section such a construction, as we are directed to do in Perles v. Hoffman, supra, and the cases therein cited, which applied a liberal construction to the code in order to preserve nomination papers and substituted nominations in order to preserve the right to individuals to run for office and to preserve for the electors an opportunity to have candidates for whom to vote. The direction to construe the code liberally, in those decisions, seems to be a sweeping command. But I do not think that a liberal construction is required of section 1772 in order to preserve the franchise of all but 11 electors in region no. 3. It seems to me that the majority have

applied reverse English to the section and construed it liberally to arrive at their conclusions.

What impresses me about the section in question is that its command becomes effective only if the ballots or ballot labels are so defective as to be calculated to mislead "the voters". It contains no direction that if "some" or "part" or "any" of the ballot labels are so defective as to mislead "some" or "any" or "a small minority" of the voters, the election be declared invalid. I think that the section contemplates defects existing in all or a substantial number of ballots used in one or more election districts thus calculated to mislead all or a substantial number of those persons who vote at the election in which such ballots are used. Snodgrass's Contested Election, 29 Dist. R. 562 (1920), affirmed 267 Pa. 494 (1920), one of the authorities relied upon by the majority, appears to support this interpretation. The lower court, at page 564, said:

"From the evidence offered as to the identity of 'H. B. Cutshall' and 'H. Cutshall', there can be but one conclusion, namely, that they are one and the same man.

"This finding of fact is the result of the weight of the evidence overcoming the presumption arising from the unlike names that they are not identical. Having due regard for this presumption, and bearing in mind that it required evidence to overcome it, and that this evidence was not presented to the people and could not have been known to the *people generally* prior to the election, we must conclude that to a *large body of voters* this identity was not known, and, therefore, the contention of the contestants that it was known to the voters of the county—which means known to all the voters—cannot be sustained." (Italics supplied.)

It is to be noted that the section would not make one defective ballot, a possibility of mechanical malfunction in the printing, cause for invalidity of the elec-

tion even though the outcome of the election may have been affected thereby. The act requires that "ballots" in an election district be defective. But how many: 11, 26, 2,600? Or a substantial number?

When the legislation contained in section 1772 of the code and prior like legislation have been considered by the courts under factual situations somewhat similar to those before us, the decisions have generally held such legislation to be applicable and have invalidated the entire election. In those decisions, the defective condition existed upon *all* ballots used in the election district, and in the majority of the decisions it appeared that a substantial number of the voters may have been misled by the defect. The decisions cited in the majority opinion are illustrative of this. In Elizabethville Borough Election, 5 Dist. R. 227 (1896), the borough consisted of one election district. Seven councilmen were to be elected but the *ballots throughout* the borough provided space for voting for only three persons for the office of councilman. In Upper Mahanoy Township Election, 16 Dist. R. 568 (1907), two township supervisors were to be elected, one for a term of three years and one for a term of one year. *All* the ballots in the township were defective in that they did not indicate thereon the terms of the candidates. In Gallagher's Contested Election, 23 Dist. R. 864 (1912), two borough councilmen were to be elected, one for a term of two years and one for a term of four years. *All* ballots in the borough were defective in that they did not indicate thereon the terms of the candidates. In Danville Election Contest, 29 Dist. R. 946 (1920), there should have been two persons elected for the office of school director for a six-year term, and one person for a term of four years. *All* the ballots were defective in that they directed the electors to vote for three persons for six-year terms of office and did not contain space for voting for any

person for the four-year term. In Contested Election of Corry School Director, 18 Dist. R. 4 (1908), the contest was, as the title indicates, for the office of school director in the second ward of the City of Corry. The defect was the printing of the name James B. Lambing, there being no such person living in the ward, upon *all* of the ballots in the ward as the Socialist party candidate for the office. In Election of Straban Township School Director, 30 D. & C. 651 (1937), the defect was the printing of a name of a person who did not reside in the township, as the Republican candidate for the office of school director. The decision does not state, but it seems evident, that the defect was upon *all* of the ballots in the township. In Harmony School District v. Butler Commissioners, 3 Butler 42 (1963), in the primary election for the office of school director in Harmony Merged Districts, consisting of three election districts, *all* of the Republican ballots in *all* three election districts were defective in that in each district names which should have appeared on the printed ballots were omitted therefrom; and in one of the three districts *all* of the Democratic ballots were defective in the same respect. In Snodgrass's Contested Election, supra, the contest was for the office of sheriff of Crawford County. The Prohibition party candidate was H. B. Cutshall, but *all* of the ballots in the county were mistakenly printed by naming H. Cutshall as the candidate.

In Foy's Election, supra, the contest was for the office of school director in the Middle Ward of Girardville Borough. It does not appear in the reported decision whether the ward was constituted of one or more voting districts or precincts, but it is apparent from the decision that *all* of the ballots were defective in that Foy's name, in disregard of a prohibiting court order, was printed upon *all* of the ballots as the Republican nominee, which party he did not represent.

One-third of the votes which he received were cast for him as the Republican nominee. While this has been the leading case in the construction of legislation similar to that contained in section 1772 of the present Election Code, I do not consider it controlling in the situation before us, for here we are confronted by the question whether the section should be applied to an election wherein only approximately one percent of the total votes cast for the office were defective, where only 11, or at the most, 26, defective ballots were scattered through only three of the nine election districts wherein the office was being voted upon, whereas in Foy all of the ballots in the ward were defective and one-third of the votes which Foy received resulted therefrom. Lanzi's Election, 94 Pitts. L. J. 286 (1945), also relied upon by the majority, I also do not consider to be persuasive in this case, for there *all* of the ballots in the second election district were defective, and although there were two election districts, in the first of which the ballots were legal and proper, nevertheless a substantial number of the ballots were defective and a substantial number of the electors voting for the office in question, that of councilman, were affected thereby.

On the other hand, when irregularities have been found in the voting processes which clearly do not fall within the circumstances legislated upon in section 1772 of the code and prior like legislation, the courts have consistently attempted to uphold the election and the franchise of the majority of the voters. For example, in The Contested Election of Edwin R. Wheelock, 82 Pa. 297 (1876), the county commissioners did not furnish a correct copy of the resident taxables to the district election officers and the election was held at a place 40 yards distant from the place fixed by law for the holding thereof. It was held that these irregularities were not grounds for setting aside the entire poll. In West Mahanoy Township's Contested

Election, 258 Pa. 176 (1917), in one precinct the ballots, tally, return sheets and supplies were generally tampered with. The records were illegally kept, the voters were threatened and intimidated. It was held that it was proper to throw out all the votes polled in that precinct but the votes from the other precincts were allowed. In Carbondale's Election, 280 Pa. 159 (1924), the return board found four more ballots in the ballot box than on the voter's check list. It was concluded that this would not warrant throwing out the vote of the entire district and thereby disfranchising 637 voters. In Daly v. Petroff, 10 Phila. 389, the court said at page 390:

" . . . Undoubtedly an election may be characterized by such an amount of fraud, and be attended by circumstances evincing such a total disregard of the election laws and the rights of the honest electors as to require the court to throw out the entire return from the division in which those wrongs are proved to have been perpetrated. This must be the case whenever the election has been conducted in such a fraudulent and unlawful manner as to render the result altogether uncertain and unreliable. If it were not so, the honest voters of the other divisions might easily be overwhelmed and virtually disfranchised by the fraud and violence which may reign in a particular locality. It is better that one or more diseased members should be cut off, than that the whole body should suffer political paralysis and death. But the power to throw out an entire division is one which ought to be exercised with the greatest care, and only under circumstances which demonstrate beyond all reasonable doubt that the disregard of the law has been so fundamental or so persistent and continuous that it is impossible to distinguish what votes were lawful and what were fraudulent, or to arrive at any certain result whatsoever . . . "

Although the following decisions, and the cases therein cited, were not concerned with defective ballots, it is instructive to observe therein that the courts refused to invalidate the entire vote in an election district where irregularities on the part of the election officials took place which did not affect the result of the election therein: Ellwood City Borough's Contested Election, 286 Pa. 257 (1926); Fish's Election, 273 Pa. 410 (1922); Eckert's Election, 308 Pa. 375 (1932); Wilkes-Barre Election Contest, 400 Pa. 507 (1960); In re Contested Nomination to Office of Road Supervisor in South Union Township, 10 Fayette 171 (1947); In re West Lampeter Township Local Option Election, 50 Lanc. 516 (1947).

I have heretofore stated my judgment that the 14 straight ballots mentioned in the majority's finding of fact no. 8(a) should be credited to Brossman and the one straight ballot mentioned in finding of fact no. 8(b) should be credited to VanTilburg. The 11 absentee ballots which I would not credit to either candidate were cast in the Middletown Township Election Districts as follows: 5 in lower no. 7; 2 in lower no. 11; and 4 in upper no. 1. It is evident that if they were credited to either Larry A. Brossman or C. William VanTilburg in the respective districts in which they were cast they would not affect the result of the election in any one such district; nor would they affect the outcome of the election in the three districts taken together, if they were credited in their entirety to either candidate and added to the total of such candidate's valid votes in the three districts. It is only against the entirety of the election in all election districts of Neshaminy School District region no. 3 that they could affect the outcome of the election, and then only if eight out of the 11 were credited to Larry A. Brossman and three thereof to C. William VanTilburg, to create a tie, or if nine were credited to Larry A.

Brossman and two thereof were credited to C. William VanTilburg, to give Larry A. Brossman a majority. This cannot be done, as has been demonstrated in the majority opinion and in foregoing portions of this opinion. If all or none of the 26 defective ballots are credited to either Brossman or VanTilburg, the outcome of the election would not be affected in any one of the three election districts or in the totality of the three districts taken together. It is only against the entirety of the election in all nine election districts of the Neshaminy School District region no. 3 that they could affect the outcome of the election and then only if 19 or more thereof were given to Brossman and none to VanTilburg.

Furthermore, if the election was to be declared to be invalid in only the three election districts in which the defective ballots were used, the result of the election would not be affected, VanTilburg would remain the successful candidate. A possible interpretation of section 1772 of the code might have required us to declare the election invalid but only as to the three election districts. I am not so sure that Judge Braham would not have reached such a conclusion in Lanzi's Election, relied upon by the majority, had the factual situation with respect to the numbers of votes cast, of defective ballots, and of voting districts affected therein been closer to the numbers we are dealing with herein. There is an indication that he may have reached such a conclusion. He said, page 290:

"In the first district Nick Lanzi won handily and he now contends that since he received more legal votes he should be declared elected. But all the votes in the second district must be rejected and Lanzi does not have a sufficient majority in the first district to render unimportant what happened in the second".

The construction which the majority has placed upon section 1772 of the code and the application which they

have made of it to the situation before us has resulted in the disfranchisement of a large number of the electors because a few have or may have been misled and, consequently, may have been disfranchised through the mistakes of the election officials. The logical consequences of the majority's opinion, I respectfully suggest, could lead to amazing results. Assume, for example, that the office in question was not so localized as that here, that the office to be filled was that of county commissioner, or that of governor, that the spread between the votes for the two leading candidates throughout the county or State was no greater than is the spread between Brossman and VanTilburg throughout Neshaminy School District region no. 3, that throughout the county or the State the ballots and ballot labels were in perfect form and order with the exception of 26 absentee ballots in Middletown Township, Lower Election District No. 7, Lower Election District No. 11, and Upper Election District No. 1; that as to these ballots the names of two of the party candidates for the office of county commissioner or for the office of governor did not appear thereon; that 15 of the 26 defective ballots were found to be marked after the party name in the party column without any other markings thereon, and that 11 remaining ballots were marked after the names of individual candidates for the various other offices shown on the ballot. What then? Would the entire election for the office of commissioner or governor be declared to be invalid? Would the election for the office be declared invalid only in the election districts wherein the defective ballots were cast, or would section 1772 be held to have no application?

For the reasons above mentioned and to the extent indicated in the foregoing opinion, I respectfully dissent.